## NEW ORLEANS, JACKSON, AND GREAT NORTHERN RAILROAD COMPANY v. OVERTON HARRIS.

A charter to construct a railroad was granted by the legislature of the State to a company styled the Canton, Kosciusko, Aberdeen, and Tuscumbia Company, and after the passage of said charter, the legislature of this State passed an act which authorized and empowered said company to assign, transfer, and set over to the New Orleans, Jackson, and Great Northern Railroad Company, all the rights, powers, privileges, franchises, immunities, and exemptions (then) owned and possessed by said company, by virtue of their charter, and of any other act passed by the legislatures of the States of Mississippi and Alabama, as well as the stock subscribed to said first-named company; upon such terms and conditions as should be agreed on by the boards of directors of the said companies; and by a proviso to said act, it was not to take effect unless accepted and approved by the stockholders representing a majority of the stock subscribed to said company, at a meeting of the stockholders called specially for that purpose, which meeting was called, and the act accepted and approved accordingly: — *Held*, that a charter is a contract within the meaning of the constitution of the United States, between the State granting the charter and the corporation itself, the obligation of which, it is not within the power of the legislature to impair.

The contract subsisting between the members of a corporate body and the corporation, is equally within the protection of the constitution; and the legislature has no right or power to confer the authority upon the stockholders of a corporation owning more than half the stock of the company, to accept of amendments to the charter under which they act: — *Held*, in this case, that the act of the legislature in question did not invest the stockholders representing a majority of the stock subscribed with authority to accept the amendment proposed to the charter.

The said charter is silent as to the method in which amendments thereto may be accepted by the stockholders. But it will not be questioned that the

518 HIGH COURT OF ERRORS AND APPEALS.

New Orleans, Jackson, and Great Northern Railroad Co. *v.* Harris.

power to accept of alterations and amendments to the charter, proposed by the legislature, and which may by the members be deemed necessary or beneficial, exists, whether such power be regarded as incident to their corporate character, or as belonging to them as members of the community.

Incorporated companies are subject to the same principle which prevails in the community at large, that the acts of the majority, in cases within their charter powers, are obligatory on the minority; and the fundamental principle of every association for self-government is, that no one shall be bound except with his own consent, expressed by himself, or his representatives; that the will of the majority in all cases, shall be taken as the will of the whole, is an implied but an essential stipulation in all associations of this sort. This is the rule in regard to all acts, authorized by the fundamental law, performed in execution of the objects of the incorporation, where the charter has made no provision on the subject.

The acceptance of the amendatory act was not a matter connected with the business, or designed to promote or carry into effect the objects, for which the company was chartered. Consequently, the general rule in regard to acts performed within the scope of the charter powers, does not apply.

The rule is, that in partnerships and joint-stock associations, the fundamental principles of the copartnership or association, cannot be altered by a vote of the majority against the consent of the minority, unless there is an express or implied provision in the articles themselves, that they may do so; and this principle is equally applicable to incorporated companies.

The corporator has a perfect right to stand upon his contract with the corporation in opposition to the action of the majority, and he has an equal right to insist upon his rights under it, against the action of the legislature: — *Held*, that under the uniform decisions of the courts in this confederacy, the acceptance of the amendatory act in the manner it was averred to have been made, could not bind the stockholders who did not assent to it.

When a person becomes a member of an incorporated company by his subscription to the stock, he agrees to be bound by the terms of the contract as defined in the charter of incorporation; he agrees to be bound by the acts of the corporation and its officers, performed within the scope of the charter powers; but upon no principle can it be held, that he impliedly consents to any alteration which would work a radical change in the structure of the association, which might be voted or accepted by even a majority of the whole of the corporators: — *Held*, that the act of acceptance of the amendatory act was absolutely void for want of power on the part of the stockholders representing a majority of the stock, to do such an act which would bind the stockholders; and the transfer and assignment are also void and ineffectual.

The party sued in this action did not become a stockholder to the company suing, and his assent to the transfer of the stock did and could not impart validity to a transaction in itself void: — *Held*, that the demurrer to the declaration was properly sustained.

ON appeal from the circuit court of Monroe county; Hon. William L. Harris, judge.

The opinion of the court contains the facts of the case.

*R. Davis* for appellant.

This suit was brought in the circuit court of Monroe county to recover the sum of one thousand dollars then due on stock subscribed by the said Overton Harris in the Canton, Kosciusko, Aberdeen, and Tuscumbia Railroad Company, and by said company transferred to the New Orleans, Jackson, and Great Northern Railroad Company. Defendant demurred, assigning many causes. This demurrer was sustained by the court below, and an amendment allowed. A second demurrer was filed and sustained.

The views I shall present to the court upon the first demurrer will embrace the considerations of the second.

The court held, in the decision made in the first demurrer, that the two companies were private corporations, and that the stockholders who had not signed the transfer were released from their subscriptions.

This decision of the court, it is thought, is erroneous. The first inquiry, then, is in relation to the character and nature of these corporations. A public corporation is by Bouvier defined to be, " corporations which are called political, and sometimes municipal corporations are those which have for their object a government of a portion of the State; and although in such case it involves some private interest, yet, as it is endowed with a portion of political power, the term public has been appropriated."

I know that the same writer says that canals, turnpike-roads, and the like, are civil corporations, and private. Whether railroads are embraced in the general expression, " and the like," I will now proceed to inquire.

Without regard to what may have been the decision of the court, upon principle, this court must determine railroads to be public corporations. If they are not public, then the legislature cannot confer upon them the power to take private property of any kind; because the thirteenth section of the declaration of

520 HIGH COURT OF ERRORS AND APPEALS.

New Orleans, Jackson, and Great Northern Railroad Co. v. Harris.

rights declares : " Nor shall any person's property be taken or appropriated to public use without the consent of the legislature, and without just compensation being first made therefor."

This clause is admitted to be a limitation upon the general powers of legislation of the State, and is a denial to them to apply private property for any use other than public. The doctrine of the age is, that sovereignty is vested in the State by virtue of an original compact between the people themselves, and is restrained by such limitations as that compact imposes. If this is the true doctrine, you are bound to declare the act authorizing the taking of lands, &c. for the use of the road, unconstitutional, or the corporation a public one. You cannot make it a hybrid, because that would not constitutionalize the act of the legislature. It must be public, or it is powerless to advance.

Now I confess, this is a subject of great delicacy, and imposes upon the court the responsible duty to make its decision conform to the constitution, or to what seem to be adjudications of the court heretofore made. This very court had the same question before it in the case of *Thompson* v. *The Grand Gulf Railroad and Banking Company*, 3 How. R. 240, and tacitly decided the company to be a public corporation. They held the act of the legislature to be constitutional, and gave no reason for the decision, and I can see none other than that it was a public corporation. The courts of the other States in this Union have adopted the same neglect in giving any reason for their decision.

To hold a railroad incorporation to be public, is by no means inconsistent with a definition given by Bouvier. It is in the nature of a municipal corporation. It possesses a certain degree of political power. It legislates for the stockholders, and manages by its own laws the operations and interests of the company. A corporation of a city does no more; and in this it differs from a turnpike, which possesses only the powers specifically given.

If, then, it is a public corporation, the decision sustaining the demurrer is wrong.

But suppose I am wrong in all this, and the court shall think

this a private corporation, still I shall be able to show that the demurrer ought not to have been sustained.

The third section of the act chartering the Canton, Kosciusko, and Tuscumbia Railroad Company provides that, " The said company shall have the privilege to connect their road with any railroad or roads which have been or may be established by the laws of this State, upon such terms and conditions as may be agreed on by the parties interested therein." Acts of 1852, 126.

To comprehend the more fully the force and effect of this section of the charter, it may not be improper to examine the nature of the contract between the State and the corporators. The State grants certain rights, and imposes certain duties; the corporators undertake to observe and perform the duties, in consideration that they shall be permitted to enjoy the rights granted; and this is the contract. 24 Cushm. 387. The court says the charter incorporating the bank is a contract between the State and the stockholders. The same doctrine is asserted by Chief Justice Marshall in the Dartmouth College Case. 4 Wheat. 518. Now the contract between the State and the Canton road is that contained in the above-recited section. Now each stockholder is bound by each stipulation in the charter; therefore, I infer that a majority in interest had the right, under the original charter, to transfer to the Orleans Company. That is evidently the contract between the stockholders.

If I am right in this view of the subject, then the court erred in sustaining the demurrer, even admitting it to be a private or civil corporation.

The second demurrer raised the point whether the New Orleans, Jackson, and Great Northern Railroad Company could accept the transfer, denying that power. Postponing, for the present, the consideration of its powers under the general powers belonging to the first New Orleans Company, we insist that the power to accept the transfer was fully given by the second section of the act of the 19th of October, 1852, p. 70, which provides, " that in the event of the transfer being made, as provided in the first section of the act, the said New Orleans, Jackson, and Great Northern Railroad Company shall be entitled,

44 *

on its entire line of route through the State of Mississippi, to the same rights, privileges, franchises, immunities, and exemptions as are now accorded to the said Canton, &c. Company." How this section is construed as not conferring the power to accept, I cannot determine. " In the event of the transfer," the Orleans Company shall have certain additional privileges. Acceptance necessarily presupposes power, and a transfer cannot be made without power to accept. Enjoyment of a thing presupposes a right, and without it you cannot possess and enjoy. Now the section declares if the transfer shall be made, as provided in the first section of the act, then and in that event the New Orleans, Jackson, and Great Northern Railroad Company shall be entitled to all the rights thus transferred. I put this question to the court: Have not the powers of the New Orleans Company been enlarged to the extent of all the powers belonging to the Canton Company? The law expressly provides that the doing of a certain thing by the Canton Company shall enlarge the rights of the New Orleans Company to a certain extent.

That thing has been done by the Canton Company, and the Orleans Company has signified its acceptance of the sequences.

That is the contract between the State and the Orleans Company, and who shall divest it of the privileges thus conferred? The contract, it is true, was executory, but nevertheless valid. It was susceptible of being executed, and was executed by the acceptance of privileges on the part of the New Orleans Company.

Having now examined the views of the case furnished by the different enactments of the legislature of the State of Mississippi, I will next consider the powers belonging to the New Orleans, Jackson, and Great Northern Railroad Company, of right. This company was organized in the State of Louisiana, under the authority of an act of the legislature passed the 12th of March, 1852, prescribing the mode of organizing corporations for works of public improvement and utility. This act gives the corporations that may be organized under it general powers to contract, to sue and be sued, to acquire and hold property,

and to establish rules for the permanent management and regulation of its affairs. This same act authorizes corporations to subscribe for stock in companies formed under it. The organization formed under this act reserved the right to increase the capital stock. The 11th section provides, that "the president and directors of said corporation shall have power to do everything necessary for the construction, repair, and maintenance of the road," &c. This power is very general; "shall have power to do every thing;" no limitation. One of the attributes of a corporation at common law is, "that it may take and grant property, contract obligations, sue and be sued by its corporate name, in the same manner with individuals." 2 Kent, 278; Angell & Ames, 59; 7 How. 522. Unless specially restrained by their charter, or by statute, they have these powers, neither limited as to objects, nor circumscribed as to quantity. Angell & Ames, 104; 7 How. 522; 2 Ala. R. 472. Every corporation, unless expressly forbidden, has, by implication of law, the power to do such acts as are essential to its existence, or necessary to enable it to perform its functions. *Banks and Heirs* v. *The Bank of the State of Alabama*, 2 Ala. R. 472; 14 Peters, 129. A power to purchase includes a power to accept. 5 Wend. 590; 18 La. 447.

Now regarding this as being the law, how can it be said that the Orleans Company has not the power to accept a transfer of stock from any quarter? Certainly municipal corporations have subscribed for stock in said company, and why may not civil corporations? No limitation is to be found in the charter. It is authorized to be done.

*D. C. Glenn* on the same side.

*S. Cocke* on the same side.

*Sale* and *Phelan* for appellee.

The Canton and Aberdeen Railroad Company was a private corporation. A charter granted by the legislature to such a corporation, involves two contracts: 1. The contract between

the State and the corporators. 2. The contract between the corporation and its stockholders.

I. As to the nature of the contract between the State and the corporation.

1. By this contract, certain franchises are granted by the State to the corporation, in consideration of the public good, which will arise from their exercise. The grant executes a contract with each individual corporator, with reference to said franchises. 4 Con. U. S. R. 554, 573, 581.

2. Of this individual interest in the franchises granted, he cannot be divested, save in some mode which acts upon him individually and directly. These are: 1. By judicial forfeiture. 2. Where it is provided for in the charter. 3. By surrender back to the State. This individual interest of each member disqualifies him as a witness on behalf of the corporation; and in order to render him competent, he must be disfranchised by *quo warranto*, as the only means of depriving him of his franchise. Angell on Cor. 594; 2 Starkie, Ev. 339. That the Aberdeen Company has been divested of the right to exercise the franchises granted by their charter in either of the two modes first mentioned, is not contended. If those rights have been destroyed, it must have been by a surrender. How, and by whom, is this last mode of destroying the franchises of a corporation to be made? The mode, it is said, has not been settled. Angell, 635. What is not sufficient, has been decided. The managers cannot make it; neither will a resolution of the stockholders surrendering their franchises, the notice of that resolution to the State executive, and his proclamation based thereon. 6 How. 622; 15 Pick. 351. The surrender must be by some solemn and formal act, on the part of the corporation, accepted by some act equally formal and solemn on behalf of the State. 15 Pick. 360; 24 Ib. 53. The act of the legislature of October 19, 1852, authorizing the transfer of the franchises to the New Orleans Company, and the proceedings under it, do not, in their forms, amount to a surrender. The Aberdeen Company still exists, and a *quo warranto* to arrest the exercise of its franchises under its original organization would fail. 24 Pick. 54. The

defendant, if at all, is only responsible to that company.  If the franchises were not surrendered to the State, then no act, either of the State or of a majority of the stockholders, can impair the precise franchises under their charter.  They exist in any and every member, and by him or them may be revived; and they can, therefore, exist in no other person or corporation. But, without determining the sufficiency of the facts to constitute a surrender, which works a destruction of the individual franchises of the dissenting members, admit that the effect of the proceedings has been thus to divest them, and to bestow on the New Orleans Company their former privileges.  This is all that can be done.  They are, then, divested of their former rights.  The State takes back what it gave, and there the power ends.  It can invest the dissenting members with no responsibilities under the New Orleans charter, as corporators, nor force them still to recognize those franchises in favor of their new possessors.  They exercise them under their own charter, or none.  4 Con. U. S. R. 584; 2 Mass. 276; 16 Ib. 87; 4 Ib. 389. When the surrender was made, the Aberdeen Company was dissolved.  The same franchises might then be granted to a new corporation, but it destroyed all the liabilities and responsibilities of the old.  Angell, 667, 668.

If the franchises can be assigned, so as to carry with it the right to hold the dissenting minority as members of the New Orleans Company, then they can be forced to hold an office in that company, under a penalty.  Angell, 291.  And this penalty may be sued for and recovered in an action of assumpsit and it need not be proved that he had notice of his election, for this he is presumed to know.  Ib. 304, 309.  A member is only presumed to know of acts which the corporation, under its charter, may legally perform.  Ib. 309.  These principles prove the absurdity of supposing that the transfer of the membership of a corporation, as corporators, may be made, as contemplated by the act of October, 1852.  That act, then, so far as it seeks to deprive the dissenting members of the franchises granted them under the Aberdeen charter, by merging them in the New Orleans charter, is unconstitutional.

526 HIGH COURT OF ERRORS AND APPEALS.

New Orleans, Jackson, and Great Northern Railroad Co. *v.* Harris.

II. As to the contract between the corporation and the stockholders for stock.

1. Admit that by the act of October, 1852, the dissenting corporators may be deprived of their right to exercise the franchises under their original charter, and even that they may be forced to recognize and exercise them in favor of the New Orleans Company, still, neither that act nor the proceedings under it, can vary their contract as stockholders, with the original corporation, nor transfer it to another. This question may be viewed : 1. As to the power of the State over this contract; 2. The power of the corporation; 3. The joint power of the State and corporation.

I. That there is a contract between the corporation and the stockholders, as distinct from the contract between the State and the corporation, which is regarded as between two individuals, and which cannot be impaired by the separate action of the State, needs no argument. That this contract cannot be impaired by the State, however great its powers over the franchises of the corporation may be, is equally certain. 4 Con. U. S. R. 573; Ch. Con. 276. It is not material that the change should be prejudicial to either party. It cannot be varied, though for a party's benefit, against his objection. The act of October 19, 1852, however, violates the contract between the Aberdeen Company and its stockholders, in the most vital particulars, to their prejudice. It changes the name of the corporation, the number of directors, removes the domicil of the corporation to another State; transfers to others the right to prescribe the time, places, and amounts in which his debts shall be paid; changes his creditor ; in case of non-payment of his stock, changes greatly to his prejudice the penalty of his default. There are numerous other changes, vitally affecting the contract of the stockholder, which need not be specified. Acts 1852, p. 131; Annual Rep. N. O. Co. p. 25; 16 Mass. 75; 4 Con. U. S. R. 538, 552, 558, 560, 586; 5 Con. U. S. R. 373, 386; 1 Peter's Dig. 570.

II. That the corporation, the Aberdeen Company, could not have made this transfer, by act of the majority, so as to bind

the dissenting minority, reference is made to the following authorities, as directly in point, without arguing their application. Angell, 353; 15 Pick. 363; 4 Met. 176; 13 Mass. 271.

III. As neither the State nor the majority of the corporation, acting separately, possess the power thus to transfer a stockholder's liability, so neither can the State authorize a majority of the corporation so to do, and by their joint concurrence legally achieve what, separately, they had no power to perform. Angell, 274–279; 2 Mass. 269; 8 Mass. 268; 16 Ib. 75; 5 Hill, 383; Ch. Con. 9, 12, 592.

IV. Admitting that authority could be conferred on a majority of the stockholders thus to control the contract of individual members, it cannot be conferred on those merely holding a majority of the stock. Such a principle would subject the rights of the many to the tyranny of a few; and, if sustained, establish a despotism under corporations, amounting to an extinguishment of such organizations.

The first count is designed to raise the question of the validity of the act and proceedings therein stated, without the assent of the defendant, and therefore contains no such allegations. This is the only difference between the two counts. There are other objections to it, which will be considered in connection with the alleged "consent" of the defendant, under the second count.

The second count avers that the defendant "consented" to the matters therein set forth. To that we reply: —

I. That no assent on the part of the defendant can create a liability to the plaintiff.

1. The plaintiff had no power to make such a contract. It is not expressly conferred by the charter, nor is it necessarily implied from the nature and purposes of the corporation. See Charter, § 11; Angell, 192–200; 7 Wend. 412; 1 Sum. C. C. R. 47; 5 Denio, 565; 4 Wheat. 636; 2 Kent, 344.

2. Admitting the power to make the contract, the mode required by the charter was not pursued, which is as necessary as the power itself. The power has no existence, but under the required form. Angell, 188; 2 Cranch, 167; 12 Wheat. 64; 2 John. 109; 7 Cow. 462; 13 Peters, 587 of the case.

The charter provides that the "president and directors shall have power," &c. See § 11. The declaration alleges the contract to have been made with "the di--ctors." The plaintiffs would not, therefore, be bound by said c\ 'ract, and there is no mutuality. Authorities need not be muh lied on this point. Angell, 190.

3. But admitting the power of plaintiffs to contract, and its binding exercise, and it is submitted that if the acts and proceedings to which defendant consented were void, they can form the basis for no contract from which a party may not dissent. 13 Mass. 271.

If this be not correct as a general principle, as between original contractors, still, if a debt be already created, and the debtor only consents that his liability may be transferred, surely, if the proceedings by which the transfer is supposed to have been made are void, no transfer was effected, and the defendant's consent is not binding upon him.

4. Again; divest the case of the difficulties which surround it, as connected with the restricted powers of corporations, and the constitutional objections urged, and suppose the stockholders in the Aberdeen Company only to possess the rights and powers of members of a private association, acting under articles, with reference to the common capital, consisting of their separate subscriptions. In such case, no member, by his individual action, can consent to a transfer of his debt due the association, either as against himself or the association, unless by the unanimous voice of its members. The articles are the constitution of the association, as the charter is of the corporation. Each member has an interest in the subscription of every other member, and each subscription entered into and formed part of the consideration upon which was based the joint contract of all. So each stockholder has an individual interest in the subscription of every other stockholder; and the subscription of each forms part of the consideration which binds, under the charter, the joint contract of all. As no member of a private association, therefore, can make a valid contract with a third party, for a transfer to him of the debt which he owes to the joint fund of the association, except by the unanimous voice of its members,

neither can a stockholder, by his own consent, transfer to another party his indebtedness to the joint-stock of the corporation, unless by the unanimous consent of the stockholders. Where the third party, therefore, claims the right to divert the individual liability of a member from the joint-stock, owned by all the members, under a transfer from the association, his right of action is incomplete, unless he alleges that transfer to have been consented to by all the members, as well as the defendant himself. 5 Hill, 386.

II. But admit the ability of the plaintiffs to contract, and the adoption of the proper mode, and that the defendant could transfer his indebtedness for stock in the "Aberdeen Company," under the circumstances of this case, to the plaintiff, so as to bind himself individually, that transfer must embody the constituents of a contract, and be made with him in his individual capacity. He is here sued upon a contract for stock in a certain corporation. That contract has been changed, and transferred to a third party. This is shown by the declaration, and would discharge the defendant. To avoid that result, it alleges that the defendant consented to the change. This is not sufficient. That consent must have been made with the plaintiff, by the defendant, as an individual; and the consideration must have moved to, and the promise made by, him in that capacity. The assent of the defendant, as a member of the corporation, to the acts of the corporation, could only bind him in the character of a corporator; and could not carry with it a renewal of his contract with the corporation, in the capacity of an individual and a stranger. 10 Mass. 384.

III. If the last proposition be correct, the averments of the declaration are wholly insufficient to charge the defendant, as upon an individual contract with the plaintiff. There is but a solitary allegation which even professes to do so; and upon that sentence depends the sufficiency of the entire count. It is this: "That the contract of transfer and assignment was made with the knowledge, approbation, and consent of the defendant." These were acts of the corporation, professedly in its corporate character, and the defendant's consent to those acts, as shown by the declaration itself, was as a member of the corporation.

It could have been nothing else. There is no privity, as parties to the contract, between the plaintiff and defendant. The contract was made by and with the " Canton, Kosciusko, Aberdeen, and Tuscumbia Railroad Company." The consideration passed between that corporation and the plaintiffs, as corporators in their corporate names. The promise on the part of the plaintiffs for that consideration, is expressly made to " the Canton, &c. Railroad Company." No consideration is shown to have passed to, or from, the defendant, nor promise made to or by him, as an individual, in conjunction with the plaintiff. A consciousness of the absence of these vital allegations, and an inability to make them, seem indicated by the language of the declaration; and the " aching void" is sought to be filled by the following brief but sweeping clause, which, at last, amounts to only a legal inference: " By which said several premises the defendant became a stockholder (?) in the said New Orleans, Jackson, and Great Northern Railroad Company to the extent of his subscription of stock, and became liable (?) to pay to the said company," &c. &c. " Nevertheless, the said defendant not regarding his liability, refuses to pay," &c. This bare inference, drawn from " several premises," that the defendant became a stockholder, and the double inference that he thereby " became liable" to the plaintiffs, must supply all the requisites of the contract. The word " promise," which is as apt as it is formal, is declined, and in lieu thereof it is alleged that the defendant " became liable to pay," &c., and disregarded his " just liability," &c. The defendant could have no remedy against the plaintiff on the contract alleged. He surely could have none in his own name, and the corporation, with whom the contract is charged to have been made, is destroyed by the contract itself.

IV. Conceding the falsity of every preceding position, the plaintiff cannot maintain this action at law, in his own name. The subscription to a corporation is not negotiable. Such a form of liability was not at common law, nor was it made so by our statute. If contemplated by the statute, it could only be assigned by " indorsement," so as to invest a right in the assignee to sue in his own name. No such indorsement is alleged. The right, if it exists, must be by virtue of the act of

New Orleans, Jackson, and Great Northern Railroad Co. *v.* Harris.

October, 1852, and the terms of the transfer. The act gives the right to assign the stock upon such "terms" as might be agreed. The right to transfer a stockholder's liability did not belong to the Aberdeen Company. The act does not profess to increase their rights or powers, but to enable the corporation to transfer only what they possessed; although the transfer of what they did possess was subject to undefined terms and conditions. If, therefore, the corporation, before the act, could not have transferred a stockholder's liability so as to invest the transferree with the right to sue in his own name, it derived no power to do so from that act. It gave the right to annex terms to the exercise of rights already possessed, but created no new rights. Had the contract of transfer attempted specially to have given this right of suing in his own name to the plaintiff, it would have been void.

But it is not alleged that such was one of the conditions of the transfer, admitting the power of the Aberdeen Company so to have made it. The extent of the allegation is, that "the Canton, &c. Company assigned to the plaintiffs the stock subscribed to said company." The transfer of the stock by no means carries with it the power to sue for it at law in the transferree's own name. The right to the thing, is altogether distinct from the remedies for its recovery.

Neither could the plaintiff sue at law in the name of the Aberdeen Company, for their use, because, after the assignment, and before suit, the Aberdeen corporation was extinguished. The plaintiff's only remedy, admitting their full right to enforce the defendant's contract with the Aberdeen Company, is in a court of equity. 2 S. & M. 241; 12 Ib. 516; 6 Pick. 427.

Mr. Chief Justice SMITH delivered the opinion of the court.

This suit was instituted in the circuit court of Monroe by the New Orleans, Jackson, and Great Northern Railroad Company, to recover one thousand dollars alleged to be due by the defendant in error, Overton Harris, for certain calls made upon the stock owned by him in said company.

In the first count of the complaint filed by the plaintiffs in error, it was alleged, that under and by virtue of an act of the

legislature of Louisiana, approved March the 11th, 1852, they became a corporation, with the name above set forth, for the purpose of constructing and maintaining a railroad from New Orleans, in the State of Louisiana, to Jackson, in this State, thence northward through the same to a point which should be deemed most favorable for continuing a railroad communication to Nashville, in the State of Tennessee, with authority to make contracts and to sue. That by an act of the legislature of Mississippi, of the 11th of March, 1852, the said company were authorized to enter on the territory of said State, and were vested with authority and all the rights necessary for the construction and maintenance of said road through the same, and were made capable of suing and being sued. That by an act of said legislature of the 3d of March, 1852, a company styled the Canton, Kosciusko, Aberdeen, and Tuscumbia Railroad Company, was chartered, with authority to construct and maintain a railroad, from the said town of Aberdeen westwardly, and southerly to Canton, and in a northern and eastern direction to the State line near Tuscumbia, in the State of Alabama, to make contracts, to sue and be sued; and also with the privilege and power to connect the said railroad with any other railroad or railroads, which had been or which might thereafter be established by law, on such terms and conditions as should be agreed upon by the parties interested therein.

The complaint further alleged, that books were opened for subscriptions to the stock of this company, that stock therein was subscribed for, and that the said corporation was fully put into operation. That the defendant subscribed for twenty shares of the capital stock of said company, at one hundred dollars each, on the 31st day of May, 1852, and that he was duly required to pay upon his stock the amount sued for.

It was also alleged, that by an act of the legislature of this State, approved October 19, 1852, passed in order the better to secure the construction of the road, the said company were authorized and empowered to assign, transfer, and set over to the New Orleans, Jackson, and Great Northern Railroad Company, all the rights, powers, privileges, franchises, immunities, and exemptions, held by them under their charter, or by virtue

of any other law of this State or of the State of Alabama, as well as the stock subscribed to them, upon such terms and conditions as should be agreed upon by the board of directors of said company, provided that the said act of the legislature should be accepted and approved by the stockholders representing a majority of stock subscribed to said company, at a meeting of the stockholders called for that purpose. That upon the said assignment and transfer being made, it was also provided by said act that the New Orleans, Jackson, and Great Northern Railroad Company, the said company should be entitled to the same rights, franchises, immunities, and exemptions which were held and possessed by the company making the transfer.

The complaint further alleged, that the act approved on the 19th of October, 1852, by which the transfer was authorized, was duly accepted and approved by the stockholders of the Canton, Kosciusko, Aberdeen, and Tuscumbia Railroad Company, representing a majority of the stock subscribed to said company at a meeting of the stockholders specially called for that purpose. That on the 17th of April, 1852, the board of directors of the New Orleans, Jackson, and Great Northern Railroad Company; and that on the 26th of the same month the board of directors of the Canton, Kosciusko, Aberdeen, and Tuscumbia Company, duly made a contract for the said transfer and assignment, which was thereafter duly delivered to each other; and that the New Orleans, Jackson, and Great Northern Railroad Company, thereupon duly accepted the said transfer and assignment.

The terms of the agreement entered into by the directors of the respective companies pursuant to which the transfer was made, are stated in the complaint; but as that contract can have no influence upon our decision, it is unnecessary to recite them.

By virtue of the several premises as above stated, it was averred that the defendant became a stockholder in the New Orleans, Jackson, and Great Northern Railroad Company, to the amount of his subscription, and as such was liable to pay to the plaintiffs the amount of the calls made upon his stock, for the recovery of which this action was brought.

The second count contains an averment that the said transfer

45 *

and assignment was made with the knowledge, approbation, and consent of the defendant. In all other respects, it is substantially the same as the first.

To this complaint the defendant interposed his demurrer, and assigned several causes of demurrer to each of the counts. The demurrer was sustained, and the plaintiffs declining to plead further, judgment final was entered in favor of the defendant; whereupon the plaintiffs sued out their writ of error.

The object of the transfer and assignment, and the agreement entered into by the respective companies, and the necessary effect of these transactions, on the supposition of their validity, was to make the defendant, to all intents and purposes, a stockholder in the New Orleans, Jackson, and Great Northern Railroad Company; to vest him with all the rights and immunities, and to subject him to all the duties and responsibilities which attached to that relation. If the transfer and assignment were valid, the defendant thereby became bound for the payment of his stock to the plaintiffs, and his liability is sufficiently alleged in the first count of the complaint.

Our inquiry, therefore, must necessarily, in the first place, be directed to the authority and power of the respective companies, as defined in the acts of incorporation; to the capacity of the one to make the transfer and assignment; and to that of the other, to accept of it.

It is very manifest that if neither corporation possessed the requisite authority and power to make the transfer and assignment valid and effective, the whole transaction was simply void. No rights were either transmitted or acquired under it. Upon the supposition that the transfer and assignment were void for the want of power in the parties to it, it is clear that the assent of the defendant to the transfer could not have the effect to render him liable to the plaintiffs upon the facts alleged in the second count of the complaint. As the very foundation of the asserted claim was, that by virtue of the transfer and assignment, the corporate existence of the Canton, Kosciusko, Aberbeen, and Tuscumbia Railroad Company, was put an end to, and that the New Orleans, Jackson, and Great Northern Railroad Company were invested, fully and to the same extent, with

all its rights, immunities, and franchises, as the same were held and possessed by it before the transfer; and that being so invested with said rights, immunities, and franchises, they were authorized to demand and recover the claim in controversy. But if the objection, based upon the want of power in these corporations, shall be found not to apply to the former, it will be necessary to determine whether the assent given to the transfer by the defendant, made him liable upon the said second count in the complaint.

'It is not controverted that the Canton, Kosciusko, Aberdeen, and Tuscumbia Company, under its charter granted on the 3d of April, 1852, were incapable of making the alleged transfer and assignment. But it is insisted that ample power and authority for that purpose was conferred by the act of the legislature of this State, approved on the 9th of October, 1852.

By reference to this act it will be seen that by the first section the said company were authorized and empowered to assign, transfer, and set over to the New Orleans, Jackson, and Great Northern Railroad Company, all of the rights, powers, privileges, franchises, immunities, and exemptions (then) owned and possessed by said company by virtue of their charter and of any other acts passed by the legislatures of the States of Mississippi and Alabama, as well as the stock subscribed to said company, upon such terms and conditions as should be agreed upon by the board of directors of the said companies. By a proviso the said act "was not to take effect unless accepted and approved by the stockholders representing a majority of the stock subscribed to said company at a meeting of stockholders called specially for that purpose." It was alleged in the complaint that this act was duly accepted and approved in the mode prescribed.

It will not be questioned, if it was within the competency of the legislature to direct in what manner the proposed amendment of their charter was to be approved and accepted by the stockholders, that the power conferred under the act was altogether sufficient to authorize the contemplated transfer and assignment.

If the legislature possessed the authority to confer upon any number of the stockholders in said company, who might be the owners of a majority of the stock, the power to accept any proposed amendments to the charter, and by such acceptance to bind the remainder of the stockholders, it might with equal propriety, so far as the isolated question of power was concerned, delegate the same right to a minority, owning but a small proportion of the stock, or to any specified number less, than a majority, or even to a single corporator. A charter is a contract, within the meaning of the constitution of the United States, between the State granting the charter and the corporation itself, the obligation of which it is not within the power of the legislature to impair. The contract subsisting between the members of a corporate body and the corporation is equally within the protection of the constitution. According to the doctrine that the legislature had the right to confer upon any number of the stockholders, who might own more than one half of the stock subscribed, the authority to accept of amendments to the charter, it is evident that the charter might be altered in its most essential stipulations, not only without the approbation but against the consent of the great body of the corporators, thereby subjecting them to duties and responsibilities not imposed by their contract with the company. This, we think, cannot be done without a clear violation of the constitution. Hence, we conclude that the act in question did not invest the stockholders representing a majority of the stock subscribed with authority to accept the amendment proposed to the charter.

The charter is silent as to the method in which amendments thereto may be accepted by the stockholders. But it will not be questioned, that the power to accept of any alterations and amendments to the charter, proposed by the legislature, and which may be deemed by the members necessary or beneficial, exists, whether such power be regarded as incident to their corporate character, or as belonging to them as members of the community. Disregarding, therefore, the provision directing the mode in which the amendatory act was to be approved and

accepted, we come to the question, Whether the acceptance of the amendment, as alleged, was a valid act, binding the company?

Incorporated companies are subject to the same principle which prevails in the community at large, that the acts of the majority, in cases within their charter powers, are obligatory on the minority. The general rule on the subject is well expressed by Ch. J. Tilghman. He says: the fundamental principle of every association for self-government is, that no one shall be bound, except with his own consent, expressed by himself or by his representatives; but actual assent is immaterial; the assent of the majority being the assent of all; and this is not only constructively but actually true; for that the will of the majority shall in all cases be taken as the will of the whole is an implied, but an essential stipulation, in all associations of this sort. *St. Mary's Church*, 7 Serg. & R. 517. When the charter has made no provision on the subject, this is unquestionably the rule, in regard to all acts authorized by the fundamental law, performed in execution of the objects of the incorporation. But it cannot be said that the acceptance of the amendatory act was a matter connected with the business, or designed to promote or carry into effect the objects for which the company was chartered. On the contrary, it looked to the destruction of its franchises and the utter extinction of its corporate existence. And this object was to be effected not by a surrender, in which case the primary objects of the incorporation would be abandoned, and the stockholders discharged of their corporate duties and liabilities; but by an assignment and transfer, to another company, of its immunities, franchises, and of the stock subscribed; under the operation of which the stockholders would, also, be transferred and subjected to the performance of contracts to which they had never assented. Here it is manifest the general rule in regard to acts performed within the scope of the charter powers, does not apply. A different principle must be resorted to in order to uphold, if it can be sustained, the position that the alleged approval and acceptance bound the company.

The rule is unquestioned that, in partnerships and joint-stock associations, the fundamental articles of copartnership or asso-

538 HIGH COURT OF ERRORS AND APPEALS.

New Orleans, Jackson, and Great Northern Railroad Co. *v.* Harris.

ciation cannot be altered by a vote of the majority against the consent of the minority, unless there is an express or implied provision in the articles themselves, that they may do it. *Natuzeh* v. *Irving et al.*, Gow on Part. 576; *Stone* v. *Lynch*, 4 J. Ch. R. 573. This principle is equally applicable to incorporated companies. The charter in these cases constitutes the fundamental articles of the association. It defines the rights and powers of the corporation, determines its objects, and fixes the individual contract of the member with the corporation itself. His contract is as clearly defined as the charter can make it. It must be conceded, that the legislature have no constitutional power, unless reserved in the grant, to change or alter, without consent, an act of incorporation, and thereby to cast upon them additional obligations, or take from them rights guaranteed by their charter. Its power over the corporation can be no greater; it can impose no additional obligation without his assent; or release him from any duty, against the will of the party thereby to be affected. In what respect can the power of a majority of a corporation transcend the authority of the legislature? He must have as perfect a right to stand upon his contract with the corporation in opposition to the action of a majority, as he would to insist upon his rights under it against the action of the legislature. This is a proposition too clear to be doubted, in all cases in which there is no stipulation, express or implied: that he shall be bound by the voice of the majority.

The incapacity of the majority to alter, fundamentally, the charter against the consent of even a single corporator, was recognized by the vice-chancellor in the case of *Curtiff* v. *The Manchester and Bolton Canal Company*, 13 Eng. Ch. R. 131, note. In that case an injunction was granted upon the application of a single shareholder in an incorporated company, restraining the company from affixing their corporate seal to a petition to parliament for an act to convert a part of the canal into a railway, and from using the corporate funds for that purpose. So in Manly against the same company, an injunction was granted for a similar purpose. Ib. 132. So also in *Ware* v. *The Grand Junction Water Company*, 2 Russ. & Mylne, 461,

the same principle was applied to a corporation upon the application of a single shareholder. It is true, on appeal, the injunction granted by the vice-chancellor was dissolved by Lord Brougham, so far as the company were restrained by it from petitioning parliament for an act to authorize the contemplated change in the charter. But the decision of the lord chancellor cannot be considered here as an authority against the principle contended for, as his decree seems to have been based upon the ground that the alteration, if made, would not affect, radically, the organization of the company, or upon the ground that the power of parliament over the subject was unrestricted. To the same effect is the very learned and able opinion of the chancellor, delivered in the recent case of *Stevens* v. *The Rutland and Burlington Railroad Company*, 1 Am. Law Reg. 154.

There can be no doubt, under the uniform decisions of the courts in this confederacy, that the acceptance of the amendatory act, in the manner it was averred to have been made, could not bind the stockholders who did not assent to it. But the question is not one of assent, as applied to the individual corporators, but one of power in the stockholders possessing a majority of the stock to accept a legislative amendment which would produce a fundamental change in the stipulations of the charter. The amendatory act imposed no obligation upon the company. It vested in the corporation no right which it did not possess under its charter. It amounted simply to a legislative permission to accept the amendment, if it should choose to do so, and could consistently with its charter rights and obligations. No case has been brought to our attention, in which it was directly decided that the acceptance of an amendment of this character, by a majority of the corporators, was absolutely void as to the corporation itself. In all the cases we have examined, the decision turned upon the question of the individual consent of the party charged or affected by the alteration. Generally, an act performed without any authority whatever is absolutely void. The principle applied to corporations is, that they possess only the powers which are specifically granted by the act of incorporation, and such as are necessary to carry into effect the powers expressly granted. 2 Kent, Com. 298. In this case it is not

pretended that the stockholders representing a majority of the stock were expressly, under the charter, vested with the power to accept of amendments thereto of the character of that under consideration; and it is impossible to conceive that it existed on the part of even a majority of the whole of the stockholders, as an implied right. Such a doctrine is repugnant to the principles of sound sense and common justice. When a person becomes a member of an incorporated company by his subscription to the stock, he agrees to be bound by the terms of his contract, as defined in the charter of incorporation; he agrees to be bound by the acts of the corporation and its officers, performed within the scope of the charter powers; but upon no principle can it be held that he impliedly consents to any alteration which would work a radical change in the structure of the association, which might be voted or accepted by even a majority of the whole of the corporators, and thereby be subjected to burdens and obligations wholly foreign to the purposes and objects of the original charter. It is our opinion, therefore, that the act of acceptance was absolutely void for want of power on the part of the stockholders representing a majority of the stock to vote an acceptance of the amendatory act. It follows hence that the transfer and assignment were also void and ineffectual.

But it is insisted that the defendant is bound by his assent to the transfer and assignment, and that the plaintiffs were entitled to a recovery upon the same count.

The ground upon which he must be held liable, if bound at all, is that by virtue of his subscription to the stock of the Canton, Kosciusko, Aberdeen, and Tuscumbia Railroad Company, he became bound to pay the calls upon his stock, as alleged, to said company; that his stock and his incidental obligation, together with the rights, immunities, and franchises of the company were transferred to the New Orleans, Jackson, and Great Northern Railroad Company; and that, under the operation of the assignment, the defendant became a stockholder in said company to the amount of his subscription to the stock of the former company, and as such is liable.

Upon the principle laid down in regard to the assignment, it

New Orleans, Jackson, and Great Northern Railroad Co. *v.* Harris.

is clear that the rights of neither party to it were in anywise affected. The act of transfer was void; the assignors parted with no right or immunity; the assignees acquired nothing. The defendant remained a stockholder in the company for whose stock he had subscribed, and as such was liable to the same extent after the attempted transfer as before the attempt was made. It is impossible to conceive that the assent of the defendant could bind him, unless his assent to the transfer rendered it effectual for the purposes intended, or unless upon some consideration passing from the assignees to him, outside of the transfer, he should be estopped from denying its validity. The only consideration, or in other words, the only ground for his liability alleged was, that the transfer in law and in fact made him a stockholder in the company to the extent of his subscription to the stock in the Canton, Kosciusko, Aberdeen, and Tuscumbia Company. It was not averred that he became a stockholder in any other way than through the said assignment and transfer, made with his knowledge, approbation, and consent. His assent did not and could not impart validity to a transaction in itself void. This, we presume, will not be controverted. He did not therefore become, in virtue of the transfer and assignment, a stockholder in the company suing in this action; consequently, no sufficient ground was shown in either count, whereon the defendant was chargeable.

Judgment affirmed.

Statement of Mr. Justice HANDY.

Being interested as a stockholder in the company of the plaintiff in error, I consented to sit in this cause at the earnest solicitation of both the parties. I determined, however, not to deliver any opinion in the case, unless it should become necessary, by a disagreement between my brethren of the bench, to a decision of the case. Such not being the result of the deliberations of the other two members of the court, I consequently take no part in the decision as made, or the opinion as delivered by a majority of the court.