THE PEOPLE OF THE STATE OF NEW YORK, APPEL-
LANT, *v.* WILLIAM J. H. BALLARD AND OTHERS,
RESPONDENTS.

*Attorney-general only authorized to bring a suit to call the trustees of a corporation to account when public interests are involved—not to settle private disputes between the trustees and certain of the stockholders.*

In an action brought by the attorney-general, in the name of The People, to compel the defendants, who were trustees and officers of the Spring Valley Hydraulic Gold Company, a corporation created under the general manufacturing act of 1848, to account for their official conduct in the management and disposition of the property of the company, and to pay to the company the value of the property which they had transferred to other corporations in violation of their official duties, it appeared that the trustees were guilty of a technical wrong to a minority of the stockholders, dissenting from their action, in transferring without their consent the company's property to a new corporation, but that such action on the part of the trustees was necessary to save the property, and was, in truth, a substantial benefit to all concerned.

*Held,* that while the non-assenting stockholders had a right to refuse to accept the benefit conferred by this action of the trustees, it was not a proper case for the attorney-general to bring an action in the name of the People to compel the trustees to account for such official conduct on their part.

The attorney-general of the State of New York, under the provisions of section 1808 of the Code of Civil Procedure, authorizing him to bring an action, if, in

his opinion, " the public interests " require it, has no authority to bring an action in the name of The People for the settlement of strictly private disputes between the trustees and a portion of the stockholders of a private corporation not charged with any public duties.

Where it appears that an action has been brought in the name of The People by the attorney-general, not upon the relation or for the benefit of creditors of a corporation, but solely in the interests of certain stockholders thereof, who are dissatisfied with the action taken by its trustees, it is competent for the court to inquire into the question as to whether there is an enforceable public interest involved in the action.

APPEAL by plaintiff from a judgment dismissing the plaintiff's complaint, entered in the office of the clerk of the county of New York on the 23d day of March, 1889.

The action was brought, pursuant to the authority contained in sections 1781 and 1782 of the Code of Civil Procedure, to compel the defendants, who were trustees and officers of the Spring Valley Hydraulic Gold Company, to account for their official conduct in the management and disposition of the property of the company, and to pay to the company the value of the property which they had transferred to other corporations in violation of their official duties. The defendant, the Spring Valley Hydraulic Gold Company, was incorporated on February 11, 1880, under the general manufacturing act of the State of New York, passed February 17, 1848.

The court found that there was no evidence in this action of a public grievance, and that the People, having no interest in the subject-matter of the action, or of any of the acts therein complained of, could not maintain the action.

*J. Langdon Ward*, for the appellant.

*Treadwell Cleveland* and *Joseph H. Choate*, for the respondents.

BARRETT, J. :

The question is here presented whether the People can maintain an action under sections 1781 and 1782 of the Code, to redress a strictly private wrong ? There is not a suggestion of public right or interest in the case.

The corporation is not a public one, nor is it a private corporation with public duties. The People of the State have no special interest

to be subserved by the proper and effective administration of the franchise, nor have the people of any locality in the State, nor has any class of citizens. It is, in fact, an ordinary business corporation, organized under the general act of 1848, for the purpose of mining in California, and it is, therefore, essentially what is known as a private corporation.

The attorney-general has brought this action in the name of the People alone. There is no relator. It does not seem to have been brought for the benefit of creditors, for it nowhere appears that any creditor has invoked the attorney-general's authority, and, indeed, the creditors were apparently provided for by the arrangement which the action questions. It is quite clear, upon the face of the complaint, that the action is solely in the interest of certain stockholders who are dissatisfied with the action of the trustees. The entire dispute, both upon the pleadings and the proofs, is between the trustees and a small minority of stockholders.

For the action complained of the trustees have the authority of a large majority of the stockholders. By that action they undoubtedly saved the property of the company for the ultimate benefit of both stockholders and creditors. They were, however, guilty of a technical wrong to the minority in transferring, without their consent, the company's property to the new California corporation ; and, although this action of theirs was necessary to save the property, and was, in truth, a substantial benefit to all concerned, yet the non-assenting stockholders have a right to refuse the benefit and to insist that they shall not be saved, against their will, by an act in excess of the trustees' authority. This is precisely what this case comes to, and, while no court should deny to the minority their full legal rights under the circumstances, it seems to me that they might well have been left to secure these rights by action in their own name and at their own risk and expense. The question of The People's right, as *quasi* statutory guardian for these stockholders, to maintain this action, was very fully and thoroughly considered by Mr. Justice INGRAHAM at Special Term, and his conclusion was adverse to the right. The same question was discussed by Judge EARL in the late case of the *People* v. *Lowe* (117 N. Y. 175), and that learned judge also denied the right. Unfortunately, the decision in that case was placed upon another ground, and the question was not determined by the Court

of Appeals. Judge Earl's opinion, therefore, is only his individual judgment, but, as such, it is entitled to the consideration always due to the reasoning of this distinguished jurist. My own judgment, upon a careful examination of the statute, in the light of these opinions, and after due consideration of the history of the law on the subject down to the passage of the Code of Civil Procedure, is that the legislature never intended to afford this as a concurrent remedy in ordinary disputes between stockholders and trustees of private corporations. It may be going too far to say that the actions provided for in subdivisions 1, 2, 5 and 6 of section 1781 of the Code, must relate, when brought by the Attorney-General in behalf of the People without a relator, to public corporations or corporations clothed with public duties. The wording of the revisers' notes to that provision of the Revised Statutes from which this section of the Code was, in part, drawn, gives color to this view; but the language used by the revisers in the act seems broader than the intent expressed in the note. That language may, without affecting the result in the present case, be deemed broad enough to cover cases where the public is in any wise interested in the management and disposition of the funds and property of a corporation, public or private, or in the faithful administration of the duties imposed upon its trustees. But, to maintain such an action, there must be some sort of public interest. That seems to be contemplated by the language used in section 1808, where the Attorney-General is authorized to bring the action, if, in his opinion, " the public interests " require it. His judgment on that head, however, does not conclude the inquiry as to whether there is an enforceable public interest involved.

A public right may be involved and the attorney-general may or may not deem it in the public interest to enforce that right by action. His judgment is conclusive as to the propriety and wisdom of bringing the action, not, of course, as to the right to maintain it. The reference in the section, however, to public interests is significant, and I cannot but think that it is illustrative of what was contemplated by sections 1781 and 1782. The history of the law on the subject also favors this construction, and is opposed to a literal reading of either the Revised Statutes or the Code.

The public interest which authorizes the maintenance of the

action may, doubtless, be intimately associated with private right. But I cannot believe that the door was opened as widely as the appellant claims, or that it was intended to permit the Attorney-General, upon behalf of the People, to interfere in strictly private disputes, entirely dissociated from public interests, merely because such disputes happen to occur within corporate lines.

Mr. Justice DANIELS evidently appreciates the difficulties which must follow his conclusion. For he acknowledges that, owing to the estoppel operating upon the assenting stockholders, the liabilities of the trustees must necessarily be limited to the measure of redress due to the non-assenting stockholders. The statute, however, authorizes no such limitation, nor does it make any provision for the settlement of the equities as between the assenting and non-assenting stockholders. How would it be possible in an action to which these stockholders are not parties to go into such questions? To take proof and adjudicate that some were estopped and others not? To bind the People thereby and to shape the judgment with relation thereto? The statute contemplates nothing of the sort. On the contrary, it distinctly provides for a judgment compelling the derelict trustees to pay *to the corporation or to its creditors* the value of any property which they have transferred to others by a violation of their duties.

And that, indeed, is the judgment which the People here demand. They do not; and they could not, ask for a judgment compelling the trustees to pay to the stockholders the proportionate value of the property transferred, that is, proportionate to the amount of the non-assenting stock. Nor could the court compel the trustees to pay such proportionate sum to the corporation for the use and benefit of the non-assenting stockholders. It follows that the People were not entitled, upon the pleadings and proofs, to such a judgment as the statute authorizes, and that the complaint was properly dismissed.

If the non-assenting stockholders had brought their action against the trustees, they would have been met with proof, in mitigation of damages, of the almost hopeless condition from which the property was rescued by the united action of the trustees and the majority of the stockholders. By the present action, brought, no doubt, in perfect good faith by the attorney-general upon their representations, the

non-assenting stockholders are enabled to evade this situation, and. if they were successful, the statute would have been utilized in the name of equity to work real injustice.

The judgment should be affirmed, with costs.

VAN BRUNT, P. J.:

I concur in the result of the within opinion. An examination of the cases decided under the Revised Statutes shows that the courts by judicial construction of the provisions of the statutes had so limited their operation that such statute had not the force which the plain meaning of the words employed gave to them. The provisions of the Code upon this subject are substantially the same as those contained in the Revised Statutes, and should receive the same construction until the interpretations placed upon the Revised Statutes are reconsidered. It follows that the decision in respect to the sections of the Code in question made in the case of the *People* v. *Lowe* (47 Hun, 577) was erroneous.

DANIELS, J.:

The action was brought pursuant to the authority contained in sections 1781, 1782 of the Code of Civil Procedure. Its object was to compel the defendants, who were trustees and officers of the Spring Valley Hydraulic Gold Company, to account for their official conduct in the management and disposition of the property of the company, and to pay to the company the value of property which they had transferred to another corporation in violation of their official duties. The Spring Valley Hydraulic Gold Company was incorporated in 1880 under the manufacturing laws of the State of New York. Its capital of $200,000 was divided into shares of one dollar each, and it was afterwards increased to the sum of $300,000, divided into like shares. After its incorporation it obtained by conveyances, made for that object, two parcels of mining property in the State of California, for which it issued nearly all of the stock into which its original capital was divided. The business of the company was that of mining upon these two parcels of land, and it continued in the pursuit of that business until 1886. And in July of that year the trustees and officers of the company, who are made defendants in the action, conveyed to a corporation, formed under the laws of the State of California, and known as the Spring

Valley Gold Company of California, all the property, real and personal, of the company of which they were officers, situated in the State of California. This disposition of the property of the Spring Valley Hydraulic Gold Company was approved by stockholders holding 143,668 shares of its stock.

But the holders of a large number of its other shares did not then, and have not since, assented to that disposition and conveyance of the property of the company. It was further alleged in the action, and evidence was given in proof of the allegations, that unauthorized dispositions of the stock of the company had been made by its trustees and officers soon after the time of its incorporation. Whether this disposition of the shares of stock was unauthorized or not, it is not necessary to examine or consider for the disposition of the appeal. For as the complaint was wholly dismissed, if the conveyance made of the property in July, 1886, by which it was conveyed to the Spring Valley Gold Company of California, was illegal or unauthorized, that will be sufficient to entitle the plaintiff to maintain the action, if the right to do that has been vested in the People of the State.

The objection has been taken in the action, and it was allowed to prevail at the trial, that the People had no such right or interest in this controversy as entitled them to maintain the action. And that objection has been urged as an answer to the appeal taken from the judgment by the plaintiff. It is no doubt true, as a general legal principle, that a party, to maintain an action in a court of justice, must appear to have an interest in its subject-matter, and that suits brought in the name of the People form no exception to the general application of this principle. That was held in *People* v. *Albany, etc., Railroad Company* (57 N. Y., 161); *People* v. *Ingersoll* (58 id., 1), and *People* v. *Brooklyn, etc., Railroad Company* (89 id., 75). But neither of these actions proceeded under these provisions of the law, nor was anything decided in either of them denying the power of the legislature to authorize an action for these objects in the name of the People, when it shall be brought by the Attorney-General. And the same answer is applicable to *People* v. *Rome, etc., Railroad Company* (103 N. Y., 95), which, like the others, did not depend upon this statutory authority.

The law, as it is contained in these sections of the Code of Civil

Procedure, was not then for the first time enacted by the legislature of the State, but it was made a part of article 2, title 4, chapter 8 of part 3 of the Revised Statutes. And it proceeded upon the power and duty of the State to restrain corporations created under its authority from the violation of the limitations designed to be imposed upon them, and to restrict their officers within the limits of their duties and obligations.

For these objects jurisdiction was given the Chancellor over directors, managers and other trustees and officers of corporations, to compel them to account for their official conduct in the management and disposition of the funds and property committed to their charge, and to compel them to pay to the corporation represented by them, and its creditors, all sums of money and the value of all property which they might have acquired to themselves or transferred to others, or might have lost or wasted, by any violation of their duties as such trustees, and to set aside alienations of property made by them contrary to the provisions of law, or for purposes foreign to the lawful business and objects of the corporations, where the person receiving the property knew the purpose for which the alienation was made. Other powers were also vested in the Chancellor by other subdivisions of the section, designed still more effectually and completely to prevent the abuse of their authority by the trustees and officers of corporations. And it was further provided by section 35 of the same article that this jurisdiction should be exercised on bill or petition, as the case may require or the Chancellor may direct, at the instance of the Attorney-General prosecuting in behalf of the People of this State, or at the instance of any creditor of such corporation, or at the instance of any director, trustee or officer of such corporation having a general superintendence of its concerns. And this legislation has not been questioned or deprived of its authority by any decision of the courts of the State which have either been referred to or discovered in the course of the investigation suggested by the action. But the same jurisdiction was continued and vested in the Supreme Court upon the abolition of the Court of Chancery. This legislation has remained a part of the statutory law of the State from the time of its enactment until the present time, and, without being substantially changed, was made to consist of article 2,

title 2, chapter 15 of the Code of Civil Procedure. And this article has, in like manner and in still more general language, directed that the action to attain these ends may be brought by the Attorney-General in behalf of the People of the State, or by any creditor, or trustee, director, manager or other officer of the corporation having a general superintendence of its concerns, except in the cases where the object of the action may be to secure the suspension of a defendant from exercising the functions of his office, or removing him from his office, etc.

The only exception which was made to the application of these enactments in the provisions of the Revised Statutes, was that they should not extend to any incorporated library society, to any religious corporation, or to any Lancasterian or select school incorporated by the Regents of the University or by the legislature. (2 R. S., 466, § 57.) And no greater restrictions have been incorporated in the Code of Civil Procedure as they have been defined and declared by section 1804. The authority in this manner provided did, therefore, include this corporation formed under the manufacturing laws of this State, and also its trustees and officers, and rendered them liable, for misconduct of this description, to be prosecuted in the name of the People in an action brought by the Attorney-General.

To commence and prosecute the action it was not necessary that any person should be joined as relator with the People, for the right to prosecute the action has been in the most general and unqualified manner vested in the People of the State. And the object of so vesting it was the protection of the citizens of the State and others from injury and loss through the misconduct and unauthorized acts of trustees and officers of corporations formed under the authority of its laws. By section 1808 of the Code of Civil Procedure, where the action can be brought only by the Attorney-General in behalf of the People, if a creditor, stockholder, director, or trustee, of the corporation applies to him to commence and prosecute it, there the suit is to be governed as to the parties by section 1986 of the Code, and the applicant made a party to it as the individual on whose relation it is prosecuted. But this action is not within these sections. For it does not appear that any person applied to the Attorney-General as relator to prosecute it. And, in addition to that circumstance, it is not such an action as could be prosecuted only by the

Attorney-General. For by the latter part of section 1782 of the Code, authority has been given to a creditor, trustee, director, manager or other officer of the corporation having a general superintendence of its concerns to commence and prosecute the action. The suit, therefore, was not only authorized by these provisions of the statutes, but it was also one which might either be prosecuted in the name of the People by the Attorney-General, or by a creditor, or either of the officers mentioned in section 1782 of the Code. And that was deemed the proper construction to be applied to these enactments in the decision of *People* v. *Lowe* (47 Hun, 577, 582). For the objects which were designed to be attained by the suit, it was regularly instituted and prosecuted under this authority.

The court at the trial has found, as a fact, that the trustees directing, and the officers executing, the conveyance acted in good faith. But that of itself will not sustain the legality of their proceedings. Neither will the authority providing for its dissolution, the payment of its debts, and the distribution of its assets among its stockholders, protect these defendants, if the corporation was, in fact, insolvent. For no such authority was either invoked or followed in the acts of these officers so far as they have been made the subject of complaint. What the law authorized them to do was to manage the stock, property and concerns of the corporation. (2 R. S. [6th ed.], 503, § 29.) That neither contemplated nor allowed a conveyance of all its property to another corporation in consideration of the issuing of its own shares of stock, to be delivered to the shareholders of the corporation of which these defendants were trustees and officers. It conferred no more authority upon them than was requisite for the management and good conduct of the business of the company of which they themselves were officers. They were vested with no power whatever to make such an exchange as this, which was the disposition of all the property of this corporation. This subject has so often been considered by the courts as to require no more than a general reference to the authorities, which, with rare exceptions, restrict the officers of corporations to the management of its affairs and business, and forbid them from making such a disposition of the property and assets of the company as substantially to terminate and destroy its ability to carry on the business for which it may have been created. This was held to be

the law in *Abbot* v. *American Hard Rubber Company* (33 Barb., 578); *Frothingham* v. *Barney* (6 Hun, 372); *Taylor* v. *Earle* (8 id., 1); *Blatchford* v. *Ross* (54 Barb., 42); *Metropolitan, etc., Railway Company* v. *Manhattan, etc., Company* (14 Abb. N. C., 108); *Copeland* v. *Citizens' Gas-Light Company* (61 Barb., 60); *Stevens* v. *Rutland, etc., Railroad Company* (29 Vt., 545); *New Orleans, etc., Railroad Company* v. *Harris* (27 Miss., 517), and *Railway Company* v. *Allerton* (18 Wall., 233). In *Treadwell* v. *Salisbury, etc., Company* (7 Gray, 393) it was incidentally considered that the trustees of a trading corporation might make such a disposition as this of its property. But the point was not essential to the decision of the case, and is quite evidently in conflict with the rule which has been sanctioned and followed by the other well-considered authorities. In *Hancock* v. *Holbrook* (9 Fed. Rep., 353) the property was disposed of for the payment of debts, the power to do which would ordinarily be included within that vested in the directors or trustees. In the case of *Buford* v. *Keokuk, etc., Company* (69 Mo., 611) the disposition which had been made was sustained under the application of the principle of estoppel; while in *Miners' Ditch Company* v. *Zellerbach* (37 Cal., 543) there was no more than a sale of corporate property. And what was said in *Hodges* v. *New England Screw Company* (1 R. I., 312, 347) and *Wilson* v. *Proprietors of Central Bridge* (9 id., 590), in no substantial manner detracts from the support of the principle which has already been mentioned; and, under its application to this case, what these trustees and officers did, in the conveyance of the property of their company to the California Company, was beyond the scope of their authority, and a misappropriation of the property made the subject of the conveyance. And for that they are legally liable to account in this action.

But this liability is necessarily to be limited by the circumstance that more than a majority of the shareholders of the corporation consented to this disposition of the property. They have estopped themselves by their consent from questioning the legality of the conveyance in this manner executed and delivered. But the large number of shareholders who withheld their consent are entitled to be indemnified for the injury and loss in this manner occasioned to them. And, within the scope of these provisions of the law, the

People, for their benefit, are entitled to maintain the action and to secure for them this measure of redress.

Whether the statute of limitations will create a legal answer to other causes of complaint presented against these defendants it is not necessary to decide. The action was not disposed of upon that ground, but the complaint was dismissed because of the inability of the People to maintain the action, and upon the assumed fact that the defendants, in what they did for the disposition of the property of the company, acted in good faith. But if this be conceded, as long as they acted without legal right and in violation of the law, their good faith will afford them no protection.

The judgment should be reversed and a new trial ordered, with costs to the plaintiff to abide the event.

Judgment affirmed, with costs.