OF THE STATE OF ARKANSAS. **463**

TERM, 1859.]          Witter vs. M., O. & R. R. R. R. Co.

WITTER vs. MISSISSIPPI, OUACHITA & RED RIVER R. R. Co.

The charter under which the appellee was formed, having definitely fixed the termini and route of the road before the appellant became a subscriber to the capital stock of the company, it was to construct a railroad upon the route thus fixed by the charter, that the appellant became a subscriber, and the charter was the law of his contract.

The act of the General Assembly of 14th January, 1857, (*Pamph. Acts* 1856, *p.* 111,) which was passed after the company had abandoned Fulton as the crossing point on Red river, as fixed in the charter, and located the crossing at the cut-off, was intended to sanction the abandonment of Fulton as the crossing point on Red river.

The acceptance of the act by the President and Directors of the company, under the authority of a *majority of the stockholders,* is not obligatory upon non-assenting subscribers; but if accepted by stockholders representing a *majority of all the stock,* as provided by the 21st section of the original charter, it would be obligatory upon the appellant and all other subscribers for stock, because it was a part of the law of their contract of subscription, that amendments made to the charter by the General Assembly might be accepted by a vote of a majority of all the stock, etc.

The stockholders who solicited or assented to the passage of the act, are bound by it; but if the appellant has not assented to it, he is released from his contract of subscription, if the act sanctions or authorizes a material departure from the route prescribed for the location of the road by the provisions of the charter under which he became a stockholder.

The change of the route of the road from crossing Red river at or near Fulton, as prescribed by the original charter under which appellant became a stockholder, to the cut-off—twenty miles distant on an air line—as subsequently fixed by the company, and sanctioned by the General Assembly, was a material departure.

No absolute rule can be laid down as to what is a *material departure,* to be applied in all cases, each case depending very much upon its own circumstances.

The materiality of the change of the route is a question of law, to be determined by the Court, upon the facts ascertained by the jury, or agreed upon by the parties

*Appeal from Hempstead Circuit Court.*

Hon. LEN. B. GREEN, Circuit Judge.

**464**     CASES IN THE SUPREME COURT

Witter vs. M., O. & R. R. R. R. Co.                    [MAY

S. H. HEMPSTEAD, for the appellant.

The instructions asked by the defendant, and refused, enunciate the principle, that where the line of a railroad is fixed in a charter, and a person subscribes for stock in the road, it is a contract that the road shall be fixed, located and constructed on the line or route thus designated, with only such deviations as shall be necessary in the progress of the work, and that a *material* and *substantial* change in the location and line of the road, without the assent of the subscriber, is a violation of the contract on the part of the corporation, and discharges the subscriber from liability on his subscription.

These instructions were based on the facts which were in evidence in the case, and ought to have been given by the Court.

They rest on a principle applicable to every contract, that where there is a material change in it, without the consent of both parties, the contract is at an end, nor can such consent be implied, but must be expressly proved.

And here a difference is to be noted between a corporation and an individual. An individual, existing for the general good of society, may make all contracts and do all acts which are not, in the eye of the law, inconsistent with this great purpose of his creation; but a corporation created for a specific purpose can only contract and act as it may be authorized by its charter. But contracts made by a corporation, within the scope of its authority, are governed by the same rules, as contracts between individuals, save only that there is a less liberal intendment in favor of corporate contracts.

What was the nature of the contract in the present case? Let us see.

The charter first filed under the general incorporation law, and afterwards ratified by the act of 22d January, 1855, declared that the company, consisting of John Dockery and others, was formed for the purpose of constructing a railroad from a point, on the bank of the Mississippi river, at or near Gaines' Landing, in the State of Arkansas, through or near Camden,

on the Ouachita river, thence to some point on Red river, *at or near Falton*, to some point on the boundary line between the State of Arkansas and the State of Texas, and should be called the " Mississippi, Ouachita and Red river railroad company." The third section of the charter states the purpose of forming the corporation in the exact language above quoted. The 4th section states how " said railroad" shall be built. The 16th provides that " the said road shall be surveyed as soon as the directors are elected, and the route through its whole extent shall be definitely fixed, determined on and marked, and the work of construction shall proceed simultaneously, commencing at the Mississippi and Ouachita rivers, going westward." The 17th gives the company the power to construct, repair and maintain " the said road heretofore described."

And the clause added by the Legislature declares that " the said company is now constructing and building the railroad mentioned in said charter, and for which the same was formed."

There can be no controversy as to the road that was fixed in the charter—no mistake as to the purpose of forming the company. It was not a charter to build a railroad from the Mississippi to Red river, wherever they pleased; but the line was fixed: the point of beginning on the Mississippi, the point of crossing the Ouachita, and the point of crossing Red river, were fixed and established; and it was not in the power of the company, either by its own action, or by amendment of the charter, to change it materially, without discharging those who did not assent to the alteration. To this road the defendant became a subscriber—in this road, thus fixed, he took stock. He did not subscribe to a road which was to have any other route, or line, or location, than that fixed in the act of incorporation. He did not subscribe to any road that was not to cross or terminate on Red river, " at *or near Fulton*," and whatever his motives may have been, it is sufficient that he engaged in that enterprise only. This subscription was a contract of mutual obligation. It amounted to an engagement on the part of the corporation to establish, construct and locate the road

according to the charter, and so that the same should cross Red river at or near Fulton; and to an engagement on the part of the subscriber to pay his subscriptions in such calls as the company should see fit to make. It was a contract, and must be construed in the same way as if the charter had been expressly incorporated in it, or referred to. *Newry Railway Co. vs. Combe,* 6 *Eng. Rail. Cases* 485, 637, 488, 641; 5 *Hill* 385.

The same rules, therefore, must be applied as to any other contract, bearing in mind the distinction hinted at, for surely, the fact that a corporation is one of the contracting parties, can make no difference. A subscriber enters into an obligation with the corporation in the nature of a special contract, the terms of which are limited by the specific provisions, rights and liabilities detailed in the act of incorporation. *Union Locks and Canals vs. Towne,* 1 *N. H.* 46. An act of incorporation or charter is just as much a part of the contract of subscription as though it had been embodied in the caption to the subscription paper. And as a corporation can exercise no powers except those conferred by the charter, it follows, that to do what is not therein prescribed, is a breach of contract. *Winter vs. Muscogee R. R. Co.,* 11 *Geo. R.* 441. Mark the language of the Georgia court—to do what is not prescribed, is a breach of contract.

The contract here entered into was as specifie and definite as the charter of the company could make it; and the meaning and intent of the parties cannot be mistaken. It was a contract to take stock in a corporation, incorporated for a particular object and purpose—to construct a particular road. The defendant assented to the object by his subscription. And it was before the survey and location of the road that defendant subscribed. On the 20th of October, 1853, the company commenced making an authorized survey of the road, and the same was located, fixed and established by the authority of the company, as follows, viz:

Beginning on the west bank of the Mississippi river, at Ferguson's point, four miles, on an air line, and eighteen miles by

road, north of Gaines' Landing; thence to Camden, and thence to Red river, and thence crossing at a point called the cut-off; thence to the boundary line between the State of Arkansas and the State of Texas.

This is the present fixed, established and located line of the road, by the authority of the company, and the road is thus permanently fixed by an amendment of the charter, without the defendant's consent.

The road, as fixed and located, is materially variant from the charter line.

On an air line, it is four miles north of Gaines' Landing, and by road, eighteen miles. It crosses Red river at the cut-off, which is twenty miles south of Fulton on an air line, and forty miles by road, and whether the deflection at Gaines' Landing may be regarded as material or not, the crossing Red river at the cut-off certainly is. It does not pass through Hempstead county at all, and the nearest point of approach is one mile.

If the line of the road had been run to Fulton, as the charter required, it would have passed through the entire length of Hempstead county, and would have gone to a town, which is the contemplated terminus, on Red river, of the Cairo and Fulton railroad, and has been a place of notoriety and business for more than twenty years.

That this change from Camden to the cut-off was material and substantial cannot be controverted. If a point, twenty miles on an air line from a place, can, by any fair construction, be called near that place, one hundred miles would not be distant, and thus all ideas of space would be confounded. The charter, in using the terms, at or near Gaines' Landing, and at or near Fulton, on Red river, only intended to cover small deviations; and never contemplated such a wide departure as has been made in the location of the road at the cut-off, and whereby it has become, in fact, a new and different road. 4 *Cush.* 70.

I unhesitatingly concede that a *slight* or *immaterial* deflection in the line of a railroad will not, nor should, absolve the sub-

468 CASES IN THE SUPREME COURT

Witter vs. M., O. & R. R. R. R. Co. [May

scribers from liability. But I do maintain that a material or substantial one, without the clear consent of the subscriber, must have that effect—because, it is changing the contract.

The first violation of the contract was on the part of the company, in a most material respect, and, on principles of law, as just as unquestioned, absolved the defendant from his engagement. For what possible right had the corporation to ask the performance of a contract, which it had first disregarded. To allow a recovery, under such circumstances, would open a wide door to fraud and breaches of faith, and unsettle well established principles governing contracts. " That a material alteration in the charter of a corporation, which is its fundamental law, will discharge a stockholder from future liability for calls on his subscription previously made, when the alteration is effected without his consent, stands on principles of law long recognized and founded in justice. I do not find that there is any contrariety of opinion on the subject. Courts have differed as to the extent of the change in a charter which will produce this consequence; but all of them unite in sanctioning the general rule. Per SCOTT, J., in *Pacific Railroad vs. Hughes*, 25 *Miss.* (*Jones*) 305.

In the *Middlesex Turnpike Co. vs. Locke*, 8 *Mass.* 268, the chief ground of defence was, that after the subscription, and before the assessments, the turnpike road had been differently located from what the first act required; and, in passing on this, the Court said:

" We are satisfied that on this point the defendant must prevail. The plaintiffs rely upon an express contract, and they are bound to prove it as they allege it. Here the proof is of an engagement to pay assessments for making a turnpike in a certain specified direction, and of the making a turnpike in a different direction. The defendant may truly say, *non hæc in fœdera veni*. He was not bound by the application of the directors to the Legislature for the alteration of the course of the road; nor by the consent of the corporation thereto. Much fraud might be put in practice under a contrary decision."

Every word is applicable to the case in hand.

In *Hartford R. R. Co. vs. Croswell*, 5 *Hill* 383, the above decision was quoted and followed. That was, also, an action of assumpsit, brought by the corporation against Croswell, the defendant, to recover certain installments upon his subscription to the capital stock of the company. The defence was, that since entering into the contract, the plaintiffs had procured an amendment of their charter, superadding to the original undertaking a new and different enterprise; in other words, that the defendant never consented to the contract upon which the action was founded. NELSON, C. J., now of the Supreme Court of the United States, delivered the unanimous opinion of the Court, to the effect that, by an essential alteration of a charter, a subscriber to stock, not assenting to the alteration, was absolved from his contract, and that no recovery could be had for assessments; and he quoted and approved the above case, also, *Indiana Turnpike Co. vs. Phillips*, 2 *Penn. Rep.* 184, as recognizing and admitting the same principle; and judgment was rendered for the defendant. The judge said there were difficulties in the way of laying down any general rules, by which to distinguish between essential and unessential alterations of a charter of incorporation, and that each case must depend upon its own circumstances, and be disposed of with a due regard to the inviolability belonging to all private contracts. *Angell & Ames on Corp.* 484.

There is thought to be a difference between a change in a road, produced by an amendment to a charter, and an alteration in a road, brought about by the direct action of the corporation in fixing and locating the road. But it is a distinction without a difference, and the principle of law remains the same in both cases; because it is the *change of the contract*—the actual *alteration in the line of the road, without the assent of the defendant*, that works the dissolution of the contract. It is not the mode of doing it, but the result which is complained of. If the charter line is abandoned and another established, materially varying from it, without the consent of the defendant, it matters not

470          CASES IN THE SUPREME COURT

Witter vs. M., O. &. R. R. R. R Co.          [May

how it was done, whether by the Legislature or the act of the company. The defendant, in either case, can rightfully claim a discharge from liability on the ground of a change in the contract. But, in the present case, they both combine.

*Barret vs. Alton R. R. Co.* 13 *Ill.* 512, was an action of assumpsit to recover installments of subscription to a railroad, and the defence was, that the defendant was discharged by reason of an intermediate change in the route of the road made by the authority of a subsequent act of the Legislature; and in passing on this, the Court held it to be clear law that the *original location or route must be pursued;* that if the change is a *material* one, a stockholder is not bound without his consent, and may avoid the payment of his subscription.

The case of *Winter vs. Muscogee R. R. Co.* 11 *Geo. R.* 438, is also in point: The Court held that the original contract of the parties cannot be materially or essentially altered, so as to bind the subscribers without their assent, and cited the case in 5 *Hill* 386, and 10 *Mass.* 385. It was an action of assumpsit to recover on a subscription to stock, and the defendant was discharged by reason of the breach of the contract on the part of the company. It is a decisive and pointed case, and I invite special attention to it. It is an express decision to sustain the principle, that where an incorporated company, either by *an amended charter or the action of the company*, locates and fixes a road, differing materially from the one specified in the charter, to which the defendant subscribed; he is absolved from further liability, and that no recovery can be had on the contract. Numerous other cases sustain the same doctrine. *Pierce on Railroads* 86, 88; 1 *N. H.* 46; 8 *Mass.* 268; 5 *Rich.* 118, 140; 22 *Mis.* 305; 4 *J. C. R.* 573.

The corporation, by accepting the subscription, undertook to establish, locate and construct a railroad to the points indicated in the charter.

In *Schenectedy Plank Road Co. vs. Thatcher*, 1 *Kernan*, 109, Parker, J., said—" it was not certainly every change of route subsequent to subscription for stock, that will discharge a stock-

holder from his express agreement to pay for his stock. The change made may be *unimportant*, and may be beneficial to stockholders. And where it is not claimed to be beneficial and the character of the *contract is not altered*, there can certainly be no reason for allowing a dissatisfied stockholder to take advantage of it."

And *Pierce on Railroad Law*, 78 says: " Nor will *unimportant* changes by the company in the location of the road, release the subscriber from his liability on his subscription."

These authorities, as well as all that have been examined, do hold that important and material changes, will have that effect. It would indeed, be quite impossible to maintain a different doctrine without ignoring all the principles that have hitherto been applied to contracts.

All the authorities which hold that an unimportant change would not discharge the defendant, impliedly concede the truth of the converse of the proposition that a material or substantial one would; and many of them concede it in express terms.

*Booker's case*, (18 *Ark.* 338,) was an *ex parte*, and a very meagre case in equity, not argued, and the only authorities referred to by counsel, save one, (5 *Hill*, 385,) related exclusively to the right of a stockholder to go into equity to prevent a misuse of corporate funds, and the numerous and well considered cases showing the effect of a change in an enterprise or material deflection in a road, were not adduced at all, nor considered by the court. The act of the 14th of January, 1857, (*Acts* 156, *p.* 112,) was passed afterwards. The facts too, in that case and in this, are different, and there is nothing, in fact, in that case which can possibly be construed as deciding the great question involved here, although I know it is claimed to have that effect.

A late case decided in Mississippi, (*Hester vs. Memphis and Charleston R. R. Co.*, 32 *Miss. R.* 378,) is in point.

HANDY J., said: " The defendant had agreed to become a stockholder in the road as located by the charter of 1850. His contract of subscription had direct reference to that charter and

**472**          CASES IN THE SUPREME COURT

Witter vs. M., O. & R. R. R. R. Co.          [MAY

the road as located by it, and that location was most material to his rights and obligations as a member of the company, insomuch that the State had no power without his consent, to change it, *nor had the corporate authorities*, nor a majority of the members, the power to bind him to the alteration, which the State might make at their instance, without his consent, there being no such power in the charter. He was bound to pay for the purpose of constructing a particular road in which he had agreed to become a stockholder, and when the route which was fixed when he became a subscriber was materially changed, he had the right to consider the enterprise to which he had bound himself as abandoned, and his contract at an end. These principles are well sustained by authority. *Middlesex Turnpike Co. vs. Locke*, 8 *Mass.* 268; *Hartford and New Haven R. R. Co. vs. Croswell*, 5 *Hill*, 383; *Indiana Turnpike Co. vs. Phillips*, 2 *Penn.* 184; and are sanctioned by this court in *New Orleans R. R. Co. vs. Harris*, 27 *Miss.* 517." See also the *Macedon Plank Road Co. vs. Lapham*, 18 *Barb.* 312; *Jewett vs. Hodgdon*, 3 *Greenl.* 103.

By the charter, (sec. 23), the stockholders of the company, in general meeting convened for the purpose, might make any modifications or changes in or additions to it, not inconsistent with its *general purposes, material objects*, or with the general incorporation law, provided such modification, addition or changes, received the assent of the holders of three-fourths of the stock in their own right, and should be properly authenticated and filed in the office of the Secretary of State. *Acts* 1854, *p.* 225. It is not shown or pretended that either of these things were done, and so the amendatory act of 1857, if it operated a material change in the road, could not be held binding on the appellant in virtue of any power given by the charter, (18 *Barb.* 313,) and in the absence of his consent, could not affect him.

It has thus been clearly established, on principle and authority, that a subscription to a railroad is a contract between the subscriber and the company, which must be governed by the same rules which apply to ordinary contracts between individ-

uals; that, although the subscriber becomes a member of the corporation by the subscription, yet that there is an individual contract between him and the corporation, which is defined by the terms of the charter; that he agrees to pay his money for a specified purpose, and which becomes the consideration of the contract; that such purpose cannot be materially changed, either by the authority or action of the Legislature, or by the action of the company against his consent, without discharging him from liability; and that an attempt to enforce a contract may be successfully met at law, by showing the violation of it first on the part of the company.

It is argued on the other side, that the change in the road, and the amendatory act confirming the change having been effected by the company, and approved by a majority of the stockholders, it binds the appellant, whether he was an assenting or non-assenting stockholder; for the reason that the whole must be bound by the acts of the majority. If this be so, certainly he cannot prevail. But I take this not to be the law, although it seems to have had some weight in the Missouri case. On the contrary, in respect to a private corporation as this is, I maintain that the majority can only bind the minority as to the ordinary business of the corporation within the scope of its charter powers, and as to any contract between the stockholder and the corporation, neither the Legislature nor a majority of the stockholders, nor the corporation, can change or impair it without his consent. As a contract, it is protected by the highest law in America, which enunciates that the obligation of contracts can never be impaired. A corporator, then, is perfectly justifiable in standing on his contract with the corporation in opposition to the action of the majority, and against the action of the Legislature, and if a material change is made in it, either by the one or the other, without his consent, he is no longer bound. *New Orleans R. R. Co. vs. Harris*, 27 *Miss.* (5 *Cushman*) 517; *Hester vs. Memphis & Charleston R. R. Co.* 32 *Miss.* 378; *Hartford & New Haven R. R. Co. vs. Croswell*, 5 *Hill*, 386; *Macedon Plank Road Co. vs. Lapham*, 18 *Barb.* 315;

30

474 CASES IN THE SUPREME COURT

Witter vs. M., O. & R. R. R. R. Co. [MAY

*Winter vs. Muscogee R. R. Co.* 11 *Geo.* 438; *Middlesex Turnpike Co. vs. Locke*, 8 *Mass.* 268; *The Ind. & E. Turnpike Co. vs. Phillips*, 2 *Penn.* 184; *Middlesex Turnpike Co. vs. Swan*, 10 *Mass.* 388; *Union Locks & Canals vs. Towne*, 1 *N. H.* 46; *Barret vs. Alton R. R. Co.* 13 *Ill.* 512; *Greenville & Columbia R. R. Co. vs. Coleman*, 5 *Rich.* 118, 140.

A majority is incapable of altering the charter fundamentally against the consent of even a single corporator. *Id.; Centliff vs. Manchester R. R. Co.*, 13 *Eng. Ch. R.* 132; *Ware vs. Grand Junction Water Co.*, 2 *Russ & M.* 461. *Livingston vs. Lynch*, 4 *Johns. Ch. R.* 596.

The case of *Revere vs. Boston Copper Co.*, 15 *Pick.* 363, is full to the point, that the vote of the majority cannot affect a contract with the corporation.

WATKINS & GALLAGHER, for the appellee.

The change of location of the route of the railroad, as described in the record, is not a *material* one, in the legal interpretation of the word; and the appellant cannot avail himself of it to absolve himself from the contract with the company.

The change is shown to be advantageous to the company. There was no change as to the *termini*, but only as to an intermediate point; no change of corporate object or identity; it still accommodates the same trade and transportation, and substantially subserves the same general interests, which the enterprise contemplated to subserve at its inception. It is only a change that amounts to a new and different enterprise, that will absolve the defendant from his obligations on his contract. *Banet vs. Alton & Sangamon R. R. Co.* 13 *Ill.* 504, and authorities there cited; *Pierce on Am. R. R. Law*, 78, 100.

The benefit which results to individual property by the location of the road, does not, in contemplation of law, enter into the consideration of the contract of subscription. 2 *Penrose & Watts*, 406, *Irvin vs. Turnpike Co.*

And where the [purposes and power of the company remain unchanged, as in this case, additional *privileges* and *benefits* conferred, (and here it was but the grant of additional privileges,

OF THE STATE OF ARKANSAS 475

Term, 1859.]        Witter vs. M., O. & R. R. R. R. Co.

in the choice of a route which is shown to be beneficial to the company), will not release a subscriber. See *Poughkeepsie & Salt Point R. R. vs. Griffin*, 21 *Barb*. 454.

If the change was not fundamental, of course the making of it by the company, and their acceptance of the amendatory acts afterwards recognizing and allowing it, are acts done by the majority of the company which bind the defendant. *Angell & Ames on Corp.* sec. 393. This principle is expressly recognized in *Booker ex parte*, 18 *Ark*. 342. .

The change in the location having been allowed by the Legislature; and accepted by the company, we hold that the defendant was bound, whether he assented or dissented.

And where the modification is not *fundamental*, but as in this case, only auxiliary to the original object, and designed to enable the corporation to carry into execution the very purpose of the original grant, with more facility, and more beneficially than they otherwise could, the individual corporator cannot complain. His assent is implied by law, as having been given at the inception of his contract, for the company to apply for and adopt such amendments enabling them to make such changes, etc. *Stevens vs. Rutland & Burlington R. R. Co.*, cited in *Pierce on R. R.* 86 *no*. 1.

In the view that this change of location was not such an alteration as to disturb or change, in any way, the original object of the company, and the act permitting it had been accepted by the company, the assent or dissent of defendant is immaterial; and in the case of *Pacific Railroad vs. Hughes*, 22 *Miss*. 291, it was held that a subscriber could not set up such changes as a defence at law to an action for calls upon such subscription: that his remedy, if any, was in equity; and this on account of the public character of the work, and the private rights of the other members of the company. We refer particularly to the opinion of Leonard, J., and the authorities reviewed and cited by him. See also, *Delaware & Atlantic R. R. vs. Irick*, 4 *Zabr*. 195.

. As to the objection that this change has not received the

476 CASES IN THE SUPREME COURT

Witter vs. M., O. & R. R. R. R. Co. [MAY

assent of the holders of three-fourths of the stock, etc., as provided in the 23d section of the charter, it may be said that the mode provided for here, in which a change may be made, is only one mode, and does not at all interfere, or take from the Board of Directors, or the majority of the company, the right to make and assent to such changes as might properly be made by virtue of their authority and interest according to the general laws governing the conducting of such corporations.

This change was one that might properly be made by the majority of the company, and in changing the location, and in accepting the charter recognizing the change, and allowing it, the defendant is bound. *Angell & Ames on Corp. sec.* 393.

On a view of this case as a whole, it does seem to us that the change of location here complained of, was not a fundamental change. It does not even make an approach to the change spoken of in the books, that might be considered as working a dissolution of the contract with the subscriber.

The object of the company was to cross the State with a railroad, commencing on the Mississippi river and terminating on the western boundary line of the State. Neither the object nor the powers of this corporation are in the least degree affected by this change; but, as to these, it is and remains the same as before the change was made. And if any deviation may be made, and not considered fundamental, which does not affect the original object and purpose of the company, so may the deviation of twenty miles in this case.

But if the extent of the deviation is important (and we do not pretend to say that, under certain circumstances, it might not be, as if some great center of trade and travel, and which this enterprise was started with a view to take advantage of as a source of profit, would be left twenty miles off, and some insignificant village substituted therefor,) yet, are there not circumstances, in certain cases, which would make a deviation of twenty miles immaterial?

Mr. Chief Justice ENGLISH delivered the opinion of the Court.

On the 30th, April, 1857, the Mississippi, Ouachita and Red River Railroad Company commenced an action of assumpsit against Daniel T. Witter, in the Hempstead Circuit Court, to recover calls due and in arrear upon shares in the capital stock of the company subscribed by him.

The declaration alleges the organization of the company, under and for the purposes designated in its charter, etc.; that on the 10th September, 1852, Witter subscribed for five shares, of $100 each, of the capital stock; that the directors had made six assessments and calls upon the stockholders, at times which are stated, from the 10th November, 1852, to the 13th of February, 1856, and that the aggregate sum of the calls due upon stock subscribed by Witter, with interest, etc., was $261 40, which he had failed to pay after due notice, etc.

On the 7th June, 1858, the cause was submitted to a jury on the general issue, with leave to give special matter in evidence. Whereupon the following agreement of facts was read in evidence by consent of parties.

" John Dockery, and others, on the 29th of November, 1852, filed in the office of the Secretary of State of Arkansas, the charter of the Mississippi, Ouachita and Red River Railroad Company, under the general corporation law, approved 8th January, 1851, and became a corporation; and, on said 29th of November, 1852, filed in said office a certificate thereof, for the purpose of constructing a railroad from a point on the bank of the Mississippi river, at or near Gaines' Landing, in the State of Arkansas, through, or near Camden, on the Ouachita river, thence to some point on Red river, at or near Fulton, to some point on the boundary line, between the State of Arkansas and the State of Texas; that the same charter, in substance, passed the General Assembly, and was approved on the 22d of January, 1855, and declared a public act.

Before the fixing or location of the road, the defendant subscribed for and became the proprietor of the shares of stock mentioned in the declaration, of one hundred dollars each, in said company, for the purpose of aiding in the construction of

478 CASES IN THE SUPREME COURT

Witter vs. M. O. & R. R. R. R. Co. [May

said railroad, between the points specified in the said charter, and the whole number of shares is 15,000.

On the 20th of October, 1853, and not before, the company commenced opening the road by making an authorized survey of the said road, and fixed, located and established the same by the authority of the company, and which has not since been changed, as follows, namely:

Beginning on the west bank of the Mississippi river, at Ferguson's point, four miles on an air line, and about eighteen miles by road, north of Gaines' Landing, thence to Camden, and thence to Red river, and crossing at a point called the cut-off, thence to the boundary line between the State of Arkansas and the State of Texas, and this is the present, fixed, established, and located line of said road, by the authority of the company.

Fulton, on a straight or air line, is twenty miles north of the cut-off, and, by usual traveling wagon-road, forty miles, and both points are on the east bank of Red river.

Dooley's Ferry is ten miles south of Fulton, on a straight or air line, and twenty miles by the usual traveling wagon road.

The cut-off is ten miles south of Dooley's Ferry, on Red river, by an air line, and twenty miles by the usual traveling wagon road.

Fulton is the highest of the three points. The hills run in near to Fulton, and the overflow there, east of Red river, is not over two or three hundred yards wide.

The road, as established and located from Camden to the cut-off, does not touch or pass through Hempstead county at all (where defendant resides), and the nearest point is about one mile.

If the line of the road had been fixed and located on a straight line to Dooley's Ferry, it would have passed through the eastern portion of Hempstead county. If it had been run to Fulton, it would have passed through the entire length and a large part of the southern portion of Hempstead county.

Fulton is the contemplated terminus on Red river of the

Cairo and Fulton Railroad, and has been a place of notoriety and business for twenty years, and more.

According to the survey and report of the engineer of the company, made in 1854, and adopted by the company, it appears that the distance from Ferguson's point, on the Mississippi river, to Fulton, on Red river, by way of Camden, is 163 miles, 2,141 feet, and the estimated cost of construction $436,-268 48.

From Ferguson's, by way of Camden, to Dooley's Ferry, on Red river, 155 miles, 2,465 feet, and the estimated cost of construction $421,254 92.

From Ferguson's, by way of Camden, to the *cut-off*, on Red river, and which has been made the point of crossing Red river, 154 miles, 3,945 feet, and the cost of construction $436,-692 74.

From Camden to Fulton, on Red river, 68 miles, 3,165 feet, and estimated cost of construction $157,649 98.

From Camden to Dooley's Ferry, on Red river, 60 miles, 3,200 feet, and estimated cost of construction of the road $142,636 36.

From Camden to the *cut-off*, on Red river, 59 miles, 4,680 feet, and estimated cost of construction $158,074 18; and of these several routes, the engineer, in the said report, says:

From the result of the experimental survey, it may fairly be assumed that, in point of grade, curvature and general practicability, there is no preference to be given to any one of these routes, until you reach the approaches to Red river, when, unquestionably, that by way of Dooley's Ferry is the best, from the fact that the banks of this stream are reached on an elevated ridge instead of through an overflow. The routes to Red river at Dooley's Ferry and the cut-off, will, upon a revision of the line, place them upon an equality in respect to distance, with cost in favor of Dooley's ferry. The crossing of Red river can be easily effected at either place by a bridge of moderate cost. The route then to the Texas terminus, would be about the same, presenting no obstacles to the construction

480     CASES IN THE SUPREME COURT

Witter vs. M., O. & R. R. R. R. Co.     [MAY

of a cheap and permanent road. I am of the opinion that the requirements of your charter will be fully complied with by crossing the river at Dooley's ferry. As to whether your road could be removed so far south as the Cut off, without a violation of your charter, is a question which I leave to your superior knowledge in these matters.

Fulton is on section 20, township 13 south, range 26 west, and the cut-off is in section 22, township 16 south, range 23 west; Camden is in section 23, township 13 south, range 17 west.

The road has not been fully constructed, nor are there means in the hands of the company, now sufficient, collected, with which to construct and complete the same, but some grading has been done upon the road between Ferguson's and Camden.

Not much has been done on the line of road from Camden to the *cut-off*, on Red river; but the company is still in existence, and has its officers and agents, and are still prosecuting the work of the eastern division of the road. There is no evidence of any direct assent or dissent, on the part of the defendant, to the establishment and location of said road, only that the defendant refused to pay, after the location thereof at the cut-off, instead of at Fulton.

The calls sued for, were regularly made, and have not been paid by the defendant. The interest on calls is ten per cent. from the time they become due until paid; and, of the calls made, the defendant was duly notified, as required by the charter of said company. The calls have not exceeded $33\frac{1}{3}$ per cent. per annum. The calls sued for, with interest unpaid, amount to the sum stated in the declaration. All of which evidence was admitted by consent, and without objection."

*Witter* then proved, " that John Dockery was President and general agent of the company, and, to obtain subscriptions in questions, stated and represented, in public speeches and private conversations, and as an inducement to so subscribe, that the road contemplated by the charter would run through Hempstead county, to Fulton, and would thus be a great benefit to

the people of the county, and would be good stock; and Witter made the subscription under the belief and on the understanding that the road would be fixed, established, located and run to the points indicated in the charter."

Which testimony, on the motion of plaintiff, the Court excluded, and the defendant excepted.

The defendant also proved that " at the cut-off, the bottom, east of Red river, is six or eight miles wide, and subject to an overflow of four feet in depth; on the west, opposite Fulton, Dooley's ferry and the cut-off, the bottom is subject to an average depth of overflow of about five feet."

Which evidence was also excluded, on motion of the plaintiff, etc.

The Court, at the instance of the plaintiff, and against the objection of defendant, instructed the jury as follows: " If the jury believe, from the testimony, that defendant subscribed for and took the number of shares of stock in said company, alleged in the declaration, and that the calls were regularly made thereon, as alleged, and defendant had due notice of such calls, agreeable to the requisitions of the charter of the company, and that none of such calls have exceeded thirty-three and one-third per centum per annum on said stock, and that these calls have not been paid as alleged, then the jury will be bound to find for the plaintiff, and they will assess the damages to the amount of such calls, with the interest thereon, severally accrued from the time the same became due and payable up to the present moment, at the rate of ten per centum per annum."

The defendant moved the Court to instruct the jury as follows, viz:

" 1. To entitle the plaintiff to recover in this action, the material allegations in the declaration must have been proved to the satisfaction of the jury.

" 2. If it appear that a charter was granted for the purpose of constructing a railroad from a point on the bank of the Mississippi river, at or near Gaines' Landing, in the State of

Arkansas, through or near Camden, on the Ouachita river, thence to some point on Red river, at or near Fulton, to some point on the boundary line between the State of Arkansas and the State of Texas, and that the defendant subscribed to the location, building and construction of said road, it is a contract of mutual obligation, requiring a compliance with the charter in that respect, on the part of the company, and payment or compliance, on the part of the defendant, and if it also appears that the plaintiff, after such subscription, fixed, established and located the road, from Camden to Red river, at the cut-off, on Red river, instead of at a point at or near Fulton, and that such deviation is material and substantial, it amounts to a non-compliance of the contract and agreement, on the part of the plaintiff, and deprives it of the right of recovering the calls in question, unless it further appears that the change in the road was assented to by the defendant.

" 3. Where the line or route of a road, with points of beginning and ending, are specified in a charter, and a person becomes a subscriber for stock in such road, it is a contract that the road shall be fixed, located and constructed on the line or route thus specified, with only such necessary deviations as the work, in its progress, may require, and a material and a substantial change in the route or location of the road, by the corporation, without the assent of the stockholders, is a violation of the contract on the part of the corporation, and discharges him from liability on his subscription."

The first was given, but the second and third were objected to by the plaintiff, and the same were refused, to which decision the defendant excepted.

The jury returned a verdict in favor of the plaintiff for the amount of calls, etc., sued for; and the defendant moved for a new trial, on the grounds that the verdict was contrary to law and evidence—that the Court excluded from the jury competent evidence offered by the defendant—misdirected the jury on the motion of the plaintiff, and refused instructions moved by defendant, etc.

The motion was overruled, the defendant excepted, and appealed.

In this Court the parties have made an agreement of record as follows:

"It is agreed that all the acts of the Legislature, in relation to the Mississippi, Ouachita and Red River Railroad, were referred to as evidence, and treated as public acts, and are to be noticed as such; that they were solicited and accepted by the President and Directors of said company, under the authority of a majority of the stockholders of said company. That this be taken as part of the bill of exceptions, as if actually inserted therein, and be applied to all the cases of said company in this Court brought to January term, 1859, from Hempstead county."

The corporation was formed, as expressed in the third section of its charter, (*Acts of* 1844, *p.* 221,) for the purpose of constructing and maintaining a railroad from a point on the bank of the Mississippi river, *at or near Gaines' Landing*, through or near Camden to some point on Red river, *at or near Fulton, thence to some point on the boundary line between the State of Arkansas and the State of Texas.*

Thus the charter fixed the general course of the road, and definitely designated the point from which it was to start, two points by which it was to pass, and definitely the point where it was to terminate.

These points were doubtless fixed upon by a concurrence of the views of the persons who were concerned in getting up and putting on foot the enterprise of constructing the road, and were inserted in it, and established by the charter. The location of the line of the road between these points, was left to the President and Directors of the corporation, (*sec.* 17,) aided, of course, by competent engineers, etc. And even as to the fixed points, a reasonable latitude was allowed them, in order to enable them to place the road upon the most advantageous ground *at or near those points.*

It was to construct a railroad upon the route thus fixed by

484    CASES IN THE SUPREME COURT

Witter vs. M., O. & R. R. R. R. Co.                    [MAY

the charter, that the appellant became a subscriber to the capital stock of the company, and the charter was the law of his contract.

It appears that after the charter of the company was drafted and filed in the office of the Secretary of State, under the general corporation law, and after the appellant became a stockholder, the President and Directors of the company caused an experimental survey to be made of the route, by an engineer, and upon his report, abandoned *Fulton* as the crossing point on Red river, and located the road so as to cross the river at the *cut-off*, twenty miles distant from *Fulton*, on a direct line; giving the *cut-off* preference also to Dooly's ferry, a crossing point ten miles nearer to Fulton than the cut-off, and which, according to the engineer's report, was equally, if not more, eligible than the *cut-off*.

After the road had been so located, the act of 14th January, 1857, (*Pamph. Acts* 1856, *p.* 111,) was passed, the 4th section of which is as follows:

"That said company may, and shall have power to locate the line of said road, between the termini thereof by the way of Camden, and at or near said termini, so as to comply with the true meaning and intention of said act for the construction of said road, in what said company may deem the most practicable manner, and best for its interest; *and that such line and location of said road and termini as said company shall have adopted*, or may adopt, shall be in all respects valid and binding as if specified at length in the charter of said company.

One of the objects of this section was, doubtless, to sanction the *abandonment* of *Fulton*, by the company, as a crossing point, on Red river. The effect of the section manifestly is, that the road shall begin and terminate at or near the points—the termini designated in the charter, and shall pass " *by way of Camden*," but the line of the road from Camden to the boundary line between Arkansas and Texas, was to be as it had been, or might be adopted by the company. The company was not to be bound, however, to locate or construct the road so as to cross

Red river at or *near Fulton*.  This conclusion is inevitable, we think, because *Camden* is still designated as a passing point between the *termini* of the road, and Fulton is not—Fulton is evidently *ignored*.

The 21st section of the original charter of the company is as follows:

" The said company hereby reserves to itself the right either to accept or reject any act of the General Assembly, altering or amending this charter, which shall be decided by the vote of a *majority of all the stock*, exclusive of that taken by the State, at a meeting of the stockholders, regularly convened for that purpose."

If the *act of 14th January*, 1857, was accepted by stockholders representing a *majority of all the stock*, etc., as provided by the above section of the charter, its provisions are obligatory upon the appellant, and all other  persons who have subscribed for stock in the company; because it was a part of the law of their contract of subscription, that amendments made to the charter by the General Assembly might be accepted by a vote of a *majority of all the stock*.

The agreement of the parties, made of record in this Court, is, that the act referred to, etc., was  accepted by the President and Directors of the company, under the authority of a *majority of the stockholders*, etc.

But this agreement fails to show an acceptance of the act as provided by the 21st section of the charter, because it does not appear that a *majority of all the stock* was owned or represented by the *majority of the stockholders*,, who accepted the act, etc., etc.

The stockholders, however, who solicited or assented to the passage of the act are bound by it; but if the appellant has not assented to it, he is released from his contract of subscription, if the act sanctions or  authorizes a material departure from the route prescribed for the location of the road by the provisions of the charter under which he became a stockholder. Such, at least, seems to be the rule established by the current

of decisions on the subject. See *Middlesex Turnpike Co. vs. Locke*, 8 *Mass.* 268; *Same corporation vs. Swan*, 10 *ib.* 385; *The Proprietors of the Union .Locks and Canals vs. Towne*, 1 *N. H.* 44; *Hester vs. Memphis & Charleston R. R. Co.* 32 *Miss. R.* 378; *The Hartford & New Haven Railrovd Co. vs. Croswell*, 5 *Hill* (*N. Y.*) 382; *Barret vs. The Alton & Sangamon Railroad Co.*, 13 *Ill.* 540; *Pierce on Am. R. R. L., p.* 78 *to* 100; *Winter vs. Muscogee Railroad Co.*, 11 *Geo. R.* 438; *Mississippi, Ouachita and Red River Railroad Co. vs. Cross, ante.*

Mr. Justice WOODBURY, in the case cited from 1 *N. Hamp.*, aptly expresses the principles upon which this rule is founded. He says:

" This is a dispute between a private corporation and one of its members. A recurrence to the nature of the liabilities of members to their own corporation, will, we apprehend, divest the case of many of its difficulties. Every individual owner of shares, etc., expects, and indeed, stipulates with the other own-ers, as a corporate body, to pay them his proportion of the expense, which a majority may please to incur in the promotion of the particular object of the corporation.

" To make a valid change in this private contract, as in any other, the assent of both parties is indispensable. The corpo-tion, on one part, can assent by a vote of the majority; the individual, on the other part, by his own personal act. How-ever the corporation, then, may be bound by the assent to the additional acts, (of the Legislature,) this defendant, in his indi-vidual capacity, having never consented to either of them, is under no obligations to the plaintiffs, except what he incurred by becoming a member under the first act. Consequently, the assessments sued for, if raised to advance *objects essentially dif-ferent*, or the same objects in methods essentially different from those originally contemplated, are not made in conformity to the defendant's special contract with the corporation, and this action, sustainable on that contract alone, cannot be supported * * * * Notwithstanding the laudable object and great

utility of the additional *acts*, still, if they effected a *material change*, he is able to say *non hæc in fœdera veni*."

In the case of *Winter vs. The Muscogee Railroad Company*, the Supreme Court of Georgia said; "We do not pretend to deny that alterations may be made in the charter of an incorporated company, in furtherance of the design and objects of the company; but in all such cases, due regard must always be had to the *inviolability* of private contracts. The *original contract* of the parties cannot be *materially* or *essentially altered* by an amendment of the charter, so as to bind the subscribers thereto, without their consent."

The counsel for the appellee insist, however, that the change of location is not a material one, in the case now before us, in the legal interpretation of the word; and that the appellant cannot avail himself of the change to absolve himself from his contract with the company, because the change is prejudicial to his individual interest, etc. That the change is shown to be advantageous to the company—that there was no change as to the *termini*, but only as to an intermediate point—no change of corporate object or identity—that the road, as located, will still accommodate the same trade and transportation, and substantially subserve the same general interests which the enterprise contemplated to subserve at its inception, etc.

This is, doubtless, the great question in this case—whether the abandonment of Fulton, as a crossing point, on Red river, and the location of the road so as to cross the river at the *cut-off*, twenty miles from Fulton, is a material change in the location of the road, in the legal sense of the term.

The case of *Barret vs. The Alton & Sangamon Railroad Co.*, 13 *Ill.* 506, favors, to some extent, the positions taken by the counsel for the appellee, as above stated. In that case, the charter under which *Barret* subscribed for stock, provided for the location of the road from Alton, on the Mississippi river, in Madison county, by the way of Carlinville, in Macoupin county, *New Berlin*, in Sangamon county, to the city of Spring-

488    CASES IN THE SUPREME COURT

Witter vs. M., O. & R. R. R. R. Co.    [MAY

field, in the county of Sangamon.   The Legislature passed an amending act, authorizing the company to change the location of the road so as to run the same direct from Carlinville to Springfield.

The board of directors accepted the provisions of the act, and changed the route of the road accordingly.   By this change the line of road was shortened about twelve miles, and the aggregate cost of construction considerably lessened; but did not run *within twelve* miles of New Berlin.   Barret actively opposed the passage of the law, and the change in the route of the road.   The alteration was generally desired by the stockholders.   Although Barret was a resident of Springfield, he was largely interested in real estate in the immediate vicinity of *New Berlin*, the value of which would have been much enhanced by the construction of the road through that place.   He was sued for assessments upon his stock, and relied upon the alteration in the route of the road under the act amending the charter, as a defence to the action.

The Supreme Court of Illinois held that the change in the route was not such as to release him from his contract of subscription.   The judge who delivered the opinion of the Court, said: The special reasons which may have influenced him to become a subscriber to the stock of the company cannot be taken into consideration.   *   *   *   *   *   It is wholly immaterial whether he became a subscriber because he believed that the stock would, of itself, be a profitable investment, or because of the incidental benefit which he might receive from the construction of the road in the immediate vicinity of his lands.   *   *   *   *   *   The rule in relation to contracts of this character must be general in its operation.   What will discharge one stockholder from the payment of his subscription, must be held to have the same effect as to others.   *   *   *   *   The matter of injury to one, or of benefit to another, cannot affect their respective liabilities.   The true question, then, is not whether the defendant was deprived of any incidental benefit by the change in the location of the road, but whether the amendment

of the charter worked such a change in the compaay as releases the subscribers from their engagements, at least, such of them as have not assented to the alteration.   *   *   *   *   *   * An alteration in a charter may be so extensive as to work a dissolution of the contract of subscription.   An amendment, which essentially changes the nature or object of a corporation, will not be binding on the stockholders.   *   *   *   *   A road intended to secure the advantages of a particular line of travel and transportation, cannot be so changed as to defeat that general object.   The corparation must remain substantially the same, and be designed to accomplish the same general purposes, and subserve the same general interests.   But such amendments of the charter as may be considered useful to the public, and beneficial to the corporation, and which will not divert its property to new and different purposes, may be made without absolving their subscribers from their engagements.   The straightening of the line of the road, the location of a bridge at a different place on a stream, or a deviation in the route from an intermediate point, will not have the effect to destroy or impair the contract between the corporation and the subscribers.   *   *   *   *   The incidental benefits which a few subscribers may realize from a particular location, ought not to interfere with the general interests of the public, and of the great mass of the corporators. * * * The subscribers are sufficiently protected against any invasion of their legitimate rights. The original location must be pursued, unless a change is sanctioned by the Legislature.   The alteration must be accepted by the managers of the company, before it becomes obligatory on the stockholders.   And the latter will not even then be bound, if *their interests are materially affected by the alteration;* and in such case they may not only avoid the payment of their subscriptions, but may recover back such sums as they have advanced thereon.   *   *   *   The alteration in the present case (*continues* THE JUDGE) is not of such a radical character as to exonerate the stockholders from the payment of their sub-

31

490          CASES IN THE SUPREME COURT

Witter vs. M., O. & R. R. R. R. Co.          [MAY

scriptions. The general features and objects of the corpora-
tion continue unchanged. The *termini* of the road remain the
same, the only change consisting in a *deviation from an interme-
diate point*. The work is still designed to accommodate the
same line of travel and transportation, and promote the same
general interests. The length of the road is reduced, and the
cost of construction diminished. The change will be useful to
the public," etc.

In *Hester vs. Memphis and Charleston Railroad Co*. 32 *Miss.
Rep*. 380, *Hester* relied upon a change of location of the road
to release him from his contract of subscription for stock, etc.,
and the court said:

" It appears by the acts of the Legislature in question, etc.,
that the route of the road was prescribed in the act of 1850, to
begin at some point on the northern boundary of this State, and
*pass through the town of Holly Springs*, and thence easterly
through this State, to some point on the Alabama line, and it is
admitted by the pleadings that the plaintiff in error became a
subscriber under that charter, etc. The act of 1854 repealed
all parts of the act of 1850 inconsistent with it, and gave the
company power to enter the State at any point on its northern
boundary, and to pass out of it at any point they might desire,
on the eastern boundary, and it is averred that by virtue of this
act the road has been located upon an entirely different route
from that prescribed in the act of 1850. It appears by the geo-
graphical position of the country, that if the road had been con-
structed from Holly Springs to the eastern line of the State, it
must have passed through the counties of Tippah and Tisho-
mingo, in the *latter of which the plaintiff in error resided;
and this may be fairly presumed to have been a consideration to his
subscribing for stock*.    *    *    *    Under these circumstances was
he bound to pay his subscription? He had agreed to become a
stockholder in the road as located by the charter of 1850. His
contract of subscription had direct reference to that charter, and
the road as located by it, and that location was most material
to his rights and obligations as a member of the company, in-

asmuch˙as the State had no power without his consent to change it, nor had the corporate authorities, nor a majority of the members the power to bind him to the alteration which the State might make at their instance, without his consent, there being no such power in the charter.   He was bound to pay for the purpose of constructing the particular road in which he had agreed to become a stockholder; and when the ˙route which was fixed when he became a subscriber, was materially changed, he had the right to consider the enterprise to which˙he had bound himself, as abandoned and his contract at an end.   These principles are well sustained by authority  *  *  *  *  *  and are sanctioned by this court in *New Orleans, etc. R. R. Co. vs. Harris,* 27 *Miss. R.* 517."

This case is more in accordance with our views of the law than the case in 13 *Illinois.*   Both cases, however, agree in the general princíple, that the change in the location of the road which will release a non-assenting subscriber, must be a *material one*—and the application of the rule to particular cases, must necessarily be controlled, to some extent, by surrounding circumstances, the character and condition of the country through which the road is to be constructed, the interests to be subserved, and the objects to be accomplished by the enterprise. And the apparent want of harmony in the decisions arises more, perhaps, from the diversity of circumstances under which the rule is applied than from any difference of opinion as to what the rule is.

In *Hester's* case, the charter under which he subscribed required the road to pass through *Holly Springs*, and upon that route it would have passed through his county.   By the amendment of the charter, no change was contemplated in the points where the road was to enter, and depart from the State of Mississippi, but an abandonment of *Holly Springs* as an intermediate point, was authorized by the amendment, and consequently the road did not pass through the county in which Hester resided, as the route to which he subscribed would have done.   This was decided to be a material departure, and an

492    CASES IN THE SUPREME COURT

Witter vs. M., O. &. R. R. R. R. Co.    [MAY

unwarranted invasion of his contract, notwithstanding the new route accommodated, perhaps, *the same line of travel* and *transportation*, and substantially subserved the same general interest.

The *primary* object of the route fixed by the original charter of the appellee, was not, perhaps, so much to accommodate any great line of travel, transportation or channel of commerce as to connect with the Mississippi river the districts of country through which it was to pass, to develop and accommodate the agricultural and other interests along the line of the road, afford facilities for the transportation of the products of the country, and doubtless to enhance the value of real property, etc. Perhaps the subscribers looked *ultimately* to a connection on the boundary line of the State, beyond *Fulton*, with a *great railroad*, to be constructed from thence to the Pacific ocean.

But the primary objects of the enterprise being such as are above indicated, perhaps more consequence was attached by the subscribers to *intermediate* points than would have been if the primary purpose of the enterprise had been to accommodate some great line of travel, transportation or channel of commerce flowing in at the *termini* of the route.

Be all this as it may, it was as much a part of the contract of the appellant under the charter, that the road should be so located as to cross Red river *at or near Fulton*, as it was that it should start from a point on the Mississippi river, *at or near* Gaines' Landing, pass *through or near Camden*, and terminate at a point beyond Fulton, on the boundary line between this State and Texas. The same law which designated the termini of the route, fixed the intermediate points; and we have no warrant for saying that the Legislature in enacting the charter, or the appellant in becoming a stockholder under it, attached more consequence to one than the other.

If the company could depart *twenty miles* from Fulton, in fixing a crossing point on Red river, without any violation of the appellant's contract, they could have departed an equal distance from Camden in fixing the line of the road from one terminus to the other, without any invasion of the contracts,

or release of the large body of subscribers who were doubtless induced to take stock in the road in consequence of the provision in the charter that it should pass *through or near* that place. If the company had desired to keep within the spirit of the *charter*, and depart from Fulton so far only as was necessary to fix upon the most advantageous point for crossing Red river to be obtained *at or near* that place, it appears from the report of the engineer that this object might have been accomplished without departing so far from Fulton as the *Cut-off*, *Dooly's ferry* being, in his judgment, an equally, if not more eligible crossing point, and ten miles nearer to Fulton than the cut-off. Motives of *policy* rather than *necessity*, must therefore have induced the selection of the cut-off as the crossing point.

There is no evidence that the appellant assented to this change in the route, or to the passage of the act sanctioning it; on the contrary, the agreement of the parties is that he refused to pay assessments upon his stock after the location of the road at the cut-off instead of Fulton.

No absolute rule can be laid down as to what is a *material departure* to be applied to all cases, each case depending very much upon its own peculiar circumstances. The materiality of the change is treated in the decisions referred to in the course of this opinion, as a question of law to be determined by the court, upon facts ascertained by the jury, or agreed upon by the parties; and so we have treated the question in this case.

Our conclusion is, that the departure from Fulton was material and unauthorized by the charter under which the appellant became a subscriber for stock in the road, and there being no evidence that he solicited, or assented to the passage of the act sanctioning the departure; or that the act was accepted by a *vote of a majority of all the stock*, etc., he was released from his contract of subscription, and the verdict of the jury upon the evidence, should have been in his favor.

The judgment of the court below refusing the appellant a new trial, must be reversed, and the cause remanded with instructions to grant him a new trial, etc., etc.

The foregoing opinion applied also to the cases of

| *Witter* vs. | *Mississippi* | *Ouachita and* | *Red River* | *R. R. Co.* |
|---|---|---|---|---|
| *Hannah* vs. | same | | same. | |
| same vs. | same | | same. | |
| *Smith* vs. | same | | same. | |
| same vs. | same | | same. | |
| *N. W. Smith* vs. | same | | same. | |
| same vs. | same | | same. | |
| *Mitchell* vs. | same | | same. | |
| same vs. | same | | same. | |
| *Phillips* vs. | same | | same. | |
| same vs. | same | | same. | |
| *Blevins* vs. | same | | same. | |
| *Collins* vs. | same | | same. | |
| *Conway* vs. | same | | same. | |
| *Cross* vs. | same | | same. | |
| *Ferguson* vs. | same | | same. | |
| *Purdom* vs. | same | | same. | |

On appeal from the Circuit Court of Hempstead county.